STATE OF WEST VIRGINIA *ex rel.* VICTOR C. WILLHIDE *v.* C. O. KING, *Mayor, et al.*

(No. 9607)

Submitted April 12, 1944.  Decided May 16, 1944.

Kenna, Judge, absent.

Wm. T. George, Sr. and Wm. T. George, Jr., for petitioner.

John K. Burdett and Jed W. Robinson, for respondents.

Fox, Judge:

At a regular election held in the City of Grafton on March 21, 1944, Victor C. Willhide and C. O. King were rival candidates for the office of mayor. On the face of the returns, as certified by the precinct election officials, Willhide received 1,012 votes and King 1,010 votes, and, upon a canvass of the returns by the board of canvassers, consisting of the mayor and two commissioners, the same result was reached. At that point King demanded a recount of the votes cast, and the result of that recount, King, being then mayor, not participating therein, was a finding by the two commissioners, acting as a board of canvassers, that Willhide had received 1,000 votes and King 1,007 votes. In the recount twelve ballots which had been voted for Willhide, and counted for him by the precinct election officials, were rejected by the board of canvassers, thus reducing Willhide's votes from 1,012 to 1,000. Just how the reduction in King's vote was brought about is not clear. Willhide, in the name of the State, filed his petition in mandamus, seeking to compel the board of canvassers to count the twelve votes cast in his favor, and rejected by said board. We awarded a rule against the members of the board, requiring them to show cause why said votes should not be counted as cast. The respondents filed a demurrer to said petition, and their return to said

rule, and the case is heard on the pleadings filed, exhibits and stipulations of fact.

There is filed with the record a stipulation, signed by counsel for Willhide and King, to the effect (1) that the certificate of the Clerk of the County Court of Taylor County attached to the said stipulation is correct; and (2) that each of the challenged voters signed the poll books or cards at the polls at the time of voting. It appears from the entire record that the names of the persons whose votes were challenged are Sybil Arlene Murray, Pearl Justina Bennett, Ada Wagner Heflin, Joseph Oscar Hanway, Gladys Frances Parkinson, Leona Marguerite Sheets, Susanna Virginia Allamong, Virgil Allamong, John T. King, Virginia F. Mason, Charles Burl Mason, Anna Clair Wilt and Harry C. Wilt, twelve of whom voted for Willhide. From the certificate of the county clerk filed with the stipulation mentioned above, we find that John T. King was not a registered voter in Taylor County at the date of the election; that Sybil Arlene Murray, Pearl Justina Bennett, Ada Wagner Heflin, Gladys Frances Parkinson, Virgil Allamong, and Susanna Virginia Allamong were each registered in the County Clerk's office of Taylor County, on March 20, 1944; and that Joseph Oscar Hanway and Leona Marguerite Sheets were so registered on March 21, 1944; that Harry C. Wilt, Anna Clair Wilt, Charles Burl Mason, and Virginia Frances Mason, who attempted to vote at precinct No. 29 in said city, had their registrations transferred, the Wilts from precinct No. 6 to precinct No. 29, and the Masons from precinct No. 4 to precinct No. 29, all on March 21, 1944, the day of the election. It also appears that the name of none of these voters appeared upon the registration roll in the precincts at which he or she voted, although it is averred that each had in his or her possession registration cards showing that they had been registered. There is, however, a general denial of this allegation and no proof to sustain it.

The position of the relator is that all of these persons were qualified voters in the City of Grafton, and that they

were entitled to vote as such; and, further, that the board of canvassers was without power or jurisdiction to pass upon the validity of the votes cast by them. It will be noted that, disregarding the statute, when the right of these persons to vote was challenged, the ballots deposited by them were attempted to be identified, but the votes so deposited were counted by the precinct election officials. We do not have a case where, upon ballots being challenged, they are identified, and either counted or rejected by the board of canvassers as the statute provides. What was done here, as to nine of the ballots so challenged, was to attach thereto a paper headed "Challenge of Voters", signed by the poll clerk, which states the names of the persons challenged, and the reason therefor, and the provisions of the statute seem to have been followed. As to three of the voters challenged, to-wit, Ada Wagner Heflin, Joseph Oscar Hanway, and Gladys Frances Parkinson, such paper is not attached to the ballot, but in lieu thereof there is a slip of paper, not even attached to the ballots, but returned with them, on which appear the names of the persons whose votes were challenged. Of these three votes, two voted for Willhide and one for King, but we are unable to state, from the record, who cast the vote for King, and who cast the votes received by Willhide. Three votes cast by absentee voters were challenged, two of which were cast for King and one for Willhide. These votes were counted, and no question is raised herein as to the correctness of that action of the precinct officials and the board of canvassers.

The right of citizens of this State to vote in elections held within the counties in which they, respectively, reside, is guaranteed by Section 1 of Article IV of the Constitution of this State; but by Section 12 of the same article, it is provided that, "The Legislature shall enact proper laws for the registration of all qualified voters in this State." Section 1 limits the right of persons to vote, in that it provides that minors, persons of unsound mind, or paupers, or one who is under conviction of treason, felony or

bribery in an election, or who has not been a resident of the State for one year, and of the county in which he offers to vote for sixty days next preceding such offer, shall not be permitted to vote while such disability continues. Obviously, only persons entitled to vote are entitled to be registered for that purpose, and Section 12, properly construed, is sufficient warrant for the enactment of laws for the ascertainment and registration of those who may be entitled to vote.

The Legislature has enacted a comprehensive statute providing for the registration of voters. Article 2, Chapter 43, of the Acts of the Legislature, 1941, as amended by Chapter 50, Acts of the Legislature, 1943. Section 1-a of Article 1, Chapter 43, of said Acts, provides that, "Citizens of the state shall be entitled to vote at all elections, including primaries held within the precincts of the counties and municipalities in which they respectively reside. But no person who has not been registered as a voter as required by law, * * * shall be permitted to vote at such election while such disability continues". The same section also provides that "* * * one who is a minor, or of unsound mind, or a pauper, or who is under conviction of treason, felony or bribery in an election, or who, in the case of state-county elections has not been a bona fide resident of the state for one year and of the county in which he offers to vote for sixty days next preceding such election, or who in the case of municipal elections has not been a bona fide resident of the state for one year and of the municipality in which he offers to vote for sixty days next preceding such election, shall be permitted to vote at such election while such disability continues." Section 1 of the same article provides that the provisions of the act shall, unless restricted by the context, apply to all elections, "except that such provisions shall be construed to be operative in municipal elections only in those instances in which they are made expressly applicable." Section 10-a of the same article provides that governing bodies of municipalities shall, for the purpose of municipal elec-

tions, provide by ordinance for making the voting precincts in the respective municipalities coincide, as nearly as possible, to the boundaries of the voting precincts fixed by the county court for all state and county elections. By Article 3, Section 14, Chapter 44, Acts of the Legislature, 1941, it is provided that it shall be the duty of municipalities to provide by ordinance for integrating the conduct of all municipal elections with the system of "Permanent Registration of Voters", and that such ordinance shall, to the extent reasonably applicable, parallel the provisions of Chapter 3 of the Official Code, which integrates county-state elections with the "Permanent Registration System", and that the provisions of the Act shall supersede conflicting provisions in existing municipal charters and shall be deemed as amendments to such charters. On June 22, 1942, the Council of the City of Grafton adopted an ordinance, Section 1 of which reads as follows: "For the purpose of holding all municipal primary, general and special elections, the provisions of the state law as contained in Chapter 3 of the Code of West Virginia and as amended pertaining to the holding of elections and permanent registration of voters is hereby adopted insofar as the same is practicable and applicable for use in the holding of such municipal elections." In addition, by Section 2 of the same ordinance, the boundaries of the election precincts in the city are defined. We have referred to these statutes, and these ordinances, in support of the assumption that the municipal election in the City of Grafton was required to be conducted, and the right to vote therein determined, under the general provisions of the "Permanent Registration Law" and other provisions of the statute governing elections in general.

As stated above, the Legislature enacted a comprehensive statute for the registration of voters, first providing for the appointment of registrars in the voting precincts. Section 26, Article 2, Chapter 43, Acts of the Legislature, 1941, provides for the registration of voters by

the clerk of the county court; and that the registration record of any voter may be altered, amended, corrected or cancelled by said clerk. The section, however, provides that, "The aforesaid registration or alteration, correction, or cancellation of registration records shall be carried on throughout the year, except during the two weeks preceding any election. * * *." Section 32 of the same article provides that a person claiming the right to register may be challenged by the clerk of the county court or by any registrar, or, in case they appear in person at the office of the clerk, by the chairman of a political party or any other qualified voter. It then provides that, "Any person so challenged may appear at the office of the clerk of the county court at any time, except during the two weeks immediately preceding any election, to show cause why the challenge should be removed." Sections 33 and 34 of the same article provide for the transfer of registration of a voter who removes his residence from one place to another within the same county, and this transfer may be effected in the office of the clerk of the county court. It is provided, however, in Section 34, that "Transfers of the registration record may be made throughout the year except during the two weeks immediately preceding any election, and if any voter shall move from one place to another within the county within the said two weeks, he shall, for that election only, vote in the precinct from which he moved." By section 37 of the same article, a person affected adversely in regard to "any matter pertaining to his registration" may obtain a hearing before the county court, with right of appeal to the circuit court, and to this Court. But by Section 38, it is provided that "The county court shall hold such hearings as shall be necessary for the purpose of reviewing any case pertaining to registration: *Provided*, That no such hearing shall be held within two weeks immediately preceding the election in which the person whose registration is affected seeks to vote."

Chapter 50, Acts of the Legislature, 1943, amends Sec-

tions 26, 34, and 38 of Article 2, of Chapter 43 of the Acts of 1941, in this particular: in each instance where the limitation of two weeks is placed upon the right to register or transfer or to have a hearing as to either, the amendments extend the limitation to thirty days before any election; so that, as the law now is, a person's right to vote is ordinarily fixed and determined thirty days before any election in which he seeks to cast his vote. The point is not important in this case, but there would seem to be doubt as to whether the ordinance adopted on June 22, 1942, should be construed as putting into effect the subsequent amendments as made by Chapter 50 of the Acts of 1943. In this case, the right of each of the voters challenged to cast his or her vote, depends upon registration and transfer less than two weeks before the election, and, therefore, we are not confronted with the question which might have been raised, had either registration or transfer occurred more than two weeks before the election.

John T. King, not being a registered voter in Taylor County, was clearly not entitled to vote. The statutes as written, would seem to make the same ruling imperative as to the other eleven votes cast for Willhide, treating all of these votes as having been properly challenged. A person is not entitled to vote unless he is registered in the manner prescribed by law. Section 3, Article II, Chapter 43, Acts, 1941. He may register before the clerk of the county court, but not within thirty days prior to the election in which he seeks to vote. He may transfer from one voting precinct to another within the county at any time he desires, but if that transfer is made within thirty days next preceding the election in which he seeks to vote, he cannot vote in the precinct to which his registration is transferred, but must return and vote, for that election only, in the precinct from which he has removed his registration. These statements are based upon the law as it now is under the provisions of Chapter 50 of the Acts of 1943; if we follow the 1941 act, as to the City of Grafton, the period would be two weeks instead of

thirty days. The majority of these voters, whose votes were challenged, registered on the 20th and 21st days of March, 1944, and those who voted by transfers, had their transfers made on the day of the election. To permit them to vote would be to ignore or plainly evade the terms of the statute. We hold, therefore, that the relator was not entitled to have counted in his favor the votes of John T. King, and the eleven other persons who were either registered or transferred within the prohibited period.

But it is stated that the commissioners of the City of Grafton, who acted as a board of canvassers, were not authorized under the law to pass upon the validity of the challenged votes. We think the answer to that proposition is this: Section 25, Article V, Chapter 44, Acts of the Legislature, 1941, provides that it shall be the duty of the receiving board to challenge the right of any person requesting a ballot to vote, if such person's registration record is not available at the time of the election; or if the signature by the person on the poll book does not conform with the signature purporting to be his on the registration record; or if the registration record of such person indicates any other legal disqualification. Section 25-a of the same article provides that any person challenged under the provisions of Section 25, shall; nevertheless, be permitted to vote, but that such person shall be given a ballot, not indorsed by the poll clerks, and, in lieu of such indorsement, the poll clerks shall fill in and sign an appropriate form indicating the challenge, the reason therefor, and the name of the challenger or challengers, and that such form shall be attached to the voter's ballot and deposited with the ballot in a separate box or envelope marked "Challenged Ballots". Section 31-a of the same article provides that the ballot of any voter challenged under Sections 25 and 25-a shall not be counted by the election officials, and that the county court shall, on its own motion, at the time of the canvassing of the election returns, sit in session to determine

the validity of such challenges, and if the court shall determine the challenges unfounded, the ballots of each challenged voter, if otherwise valid, shall be counted and tallied together with the regular ballots cast in the election, and that in the determination of such question the court shall disregard technical errors, omissions or oversights, if it can reasonably be ascertained that the challenged voter was entitled to vote. Under the conforming ordinance of June 22, 1942, the power of the county court is, we think, vested in the board of commissioners of the municipality.

The procedure prescribed by statute was not followed, because the persons whose votes were challenged were not only permitted to deposit their votes, but their votes were counted, and were added to the total of other votes cast for Willhide. In the canvass of the votes the same result was reached as that appearing on the face of the returns, and these challenged votes were so counted to reach that result. Then it was that the recount was demanded, and, for the first time, the question was raised as to the right of these challenged voters to participate in the election. We think the statute and ordinance clearly confer upon the board of commissioners the right to determine the validity of these challenged ballots, and the fact that the question was not presented in the exact manner contemplated by the statute is not material.

Ada Wagner Heflin, Joseph Oscar Hanway, and Gladys Marguerite Parkinson cast their ballots in election precinct No. 23. Appropriate forms indicating the challenge, required to be filed by the poll clerks, were not filed as to these voters and their ballots. All we have are the three ballots, with three separate and detached pieces of paper on which appear the names of the voters, and their local street addresses. This proceeding was irregular, and we do not have the required identification of the ballots challenged. But the fact remains that these persons registered too late to entitle them to vote in the election held on March 21, 1944, and this plainly appears

upon the record, and their ballots were returned by the precinct officials as challenged ballots. Although after the challenge, the proceedings were irregular, it is clear that these ballots should not have been counted by the election officials, and cannot be legally counted by the board of canvassers.

Some confusion exists as to the exact meaning of Section 3, Article II, Chapter 43, Acts of 1941. That section provides that, "No voter otherwise qualified shall be permitted to vote at any election unless he shall have been duly registered, or shall have placed himself within the 'Challenged Voters' provision of this chapter." Chapter 43 amends Article 1 of Chapter 3 of the Code, and repeals and reenacts Article 2 of said chapter. The confusion arises out of the use of the provisions which permits a voter to place himself within the challenged voters provision of the chapter. The only provisions in the chapter referred to are those contained in Sections 25, 25-a, and 31-a of Article V of Chapter 44 of the Acts of 1941, and we have herein discussed those sections. In brief, Section 25-a, provides that any person challenged in accordance with the provisions of Section 25, shall nevertheless be permitted to vote in an election, and then goes on to say that he shall be given a ballot, not endorsed by the poll clerks, and that said clerks shall fill in and sign appropriate forms showing the challenge, the reason therefor, and the name or names of the challengers. In then provides that such form shall be securely attached to the voter's ballot, and deposited with the ballots in a separate box or envelope, and marked "Challenged Ballots". It is obvious that under this procedure all that has been done is to deposit the ballot, rather than vote the same. There are two ways of casting a vote, one is where there is no challenge and the vote is counted by the election precinct officials; and the other where a challenge is made, in which event the vote is only deposited, and is counted or not counted as the board of canvassers may determine under the provisions of Section 31-a. Section 25 authorizes

challenges where a voter's registration record is not available at the time of the election; or if the signature written by the person in the poll book does not correspond with the signature purported to be on his registration record; or if the registration record of such person indicates any other legal disqualifications. A person may have been duly registered, but for some reason, many times involving errors and mistakes on the part of registration officials, his registration record has not been furnished to the election officers; or an apparent failure of the signature to correspond to that on his registration record, which may be explained; or other legal disqualifications may exist on account of the removal of a voter from the county or state or otherwise. When such a situation arises, the voter does not vote at the polls, and only deposits his ballot. His vote is made effective, or not, when the challenge and reasons therefor are passed upon by. the board of commissioners. This must be the meaning of the statute. Certainly the Legislature did not mean to nullify the registration system by permitting persons to vote, merely because they were duly qualified to vote, but had failed to register as and when the statute prescribes. That persons duly qualified to vote, fail to comply with the requirements of the statute in respect to registration, enacted to prevent fraud in elections, and thereby place them in a position where they are not permitted to vote, is regrettable; but as respects requirements of statutes, affecting the action of the voter himself, they are mandatory. Registration is not enough. It must be registration within the periods provided for by statute, and the same rule applies to transfers.

The peremptory writ prayed for is denied.

*Writ denied.*