STATE *ex rel.* J. H. MATTHEWS, *Chairman, etc., Relator, v.* J. W. ANDERSON, *Clerk, etc., Respondent*

(No. 9665)

Submitted October 20, 1944. Decided October 25, 1944.

148

B. T. *Clayton*, for relator.
T. C. *Townsend* and J. V. *Brennan*, for respondent.

Lovins, Judge:

J. H. Matthews, as Chairman of the Democratic Executive Committee of Putnam County, in his own right and on behalf of all voters and citizens of that county, insti-

tuted this original proceeding in mandamus against J. W. Anderson, Clerk of the Circuit Court of Putnam County.

Relator in substance alleges in his petition that respondent has failed to perform his duties as Clerk of the Circuit Court of Putnam County in the following particulars, all of which relate to absentee voting by persons in the armed services of the United States:

(1) That respondent has refused to comply with an order of the County Court of Putnam County, requiring him to place a container in his office in which to deposit voted absent voters' ballots, and that said container be locked with two locks, the key to one lock to be kept by respondent and the key to the other to be kept by a member of the board of ballot commissioners of that county of opposite politics to respondent.

(2) That respondent upon receiving requests for absent voters' ballots has failed and refused to send such requests to the clerk of the county court so that the latter may "check" the information appearing thereon with the registration records in his office and make corrections, if necessary.

(3) That instead of receiving absent voters' ballots from the United States post office at Winfield, Putnam County, respondent has procured a post office box at St. Albans, in Kanawha County, and receives such ballots at the latter post office.

(4) That respondent permitted a soldier to cast one ballot and, thereafter allowed him to destroy it at the solicitation of a party worker and cast another, and later respondent permitted the same soldier, after having destroyed the second ballot, to cast a third ballot at the solicitation of another party worker.

(5) That absent voters' ballots received by respondent are kept in an unsealed container and in a place to which the public has access.

(6) That on one occasion a son of respondent, having no official status, received from the United States post office at Winfield the ballot of an absent voter, and that the sealed envelope containing the ballot was kept for a

short time in a restaurant operated by the respondent in an insecure place.

(7) That in three instances ballots were marked in respondent's office by persons expecting to be absent on election day, and he permitted literate and physically qualified voters to receive aid in preparing and marking their ballots.

(8) That respondent refused to allow two persons duly registered and members of the armed services of the United States to cast absent voters' ballots.

Respondent admits that he has refused to comply with the order of the county court above mentioned; that he has refused to send requests for absent voters' ballots to the Clerk of the County Court of Putnam County for comparison with the registration records; that he has rented a post office box in the United States post office at St. Albans, West Virginia; and that he permitted a soldier to cast three ballots, but in each instance the ballots previously cast were destroyed by the voter before another ballot was cast. All other charges made by relator are denied by respondent.

Depositions were taken in support of the opposing contentions of the parties hereto.

The duties of respondent relative to the reception and preservation of absent voters' ballots are imposed by Code, 3-6, and Chapter 1, Acts of the Legislature, First Extraordinary Session, 1944, and designated in the title of the Act as Code, 3-6a. The purpose of the enactment in 1944 is to afford citizens and voters of this State now in the armed services of the National Government an opportunity to cast their ballots during the present war, and hence the provisions of Code, 3-6a, are temporary. Notwithstanding their temporary character no other statute is of greater importance. It is altogether proper and fitting that persons engaged in defending this country and its system of government should be accorded every facility and consideration for participating in the choice of its various officials.

The clerks of the circuit courts of this State have been designated by the Legislature to perform part of the duties necessary to effectuate the legislative purpose. Statutes providing for absent voters' ballots are silent as to authority of the county court relative to furnishing such ballots to voters and the methods by which the ballots are received, preserved and forwarded to precinct election commissioners of the various precincts. A county court as to the matters here considered is a court of limited jurisdiction. See *Boone* v. *Boone,* 123 W. Va. 696, 703, 17 S. E. 2d 790. No statute empowers a county court to direct a clerk of the circuit court as to how and by what means he shall preserve the integrity of absent voters' ballots received by him. An absent voter's ballot should remain in a sealed envelope, and such envelope with the ballots therein should be kept by the clerk in such place and in such manner that no person other than the clerk or his deputy may have access thereto.

The failure of respondent to send requests for absent voters' ballots to the clerk of the county court in order that he may "check" the information thereon with registration records is in direct contravention of Section 10, Chapter 1, Acts of the Legislature, First Extraordinary Session, 1944. The importance and relation of the part of the statute here considered to the subject matter and purpose of the entire act are obvious, and must be held to be mandatory. The duty thus imposed on the respondent to send such requests to the clerk of the county court requires the exercise of no discretion, and the performance of that duty will be compelled by mandamus.

In admitting that he obtained a post office box at St. Albans, respondent says that he did so because he had received envelopes containing absent voters' ballots from the post office at Winfield, the county seat of Putnam County, which bore evidences of tampering. Respondent attempts to minimize his action by alleging that he had received only six or seven ballots from the post office at St. Albans. There is no specific statute requiring respondent to avail himself of the convenient and usual postal

facilities, but we fail to see any necessity for such unprecedented action. Certainly, respondent's reason for obtaining a post office box at St. Albans is dubious, when it is considered that on complaint by respondent, investigation and corrective action, if necessary, by proper officials of the Federal Government would have allayed suspicion and removed the cause, if any existed.

The action of respondent in permitting a voter to cast three ballots after the voter had destroyed a ballot previously cast cannot be excused as a mere irregularity. However, the fact that he sought and obtained legal advice from the prosecuting attorney of the county tends to show that he acted in good faith in so doing. But the failure to perform an imperative official duty is not obviated by a mistaken interpretation of the law which imposes that duty. It is true that a person who has received an absent voter's ballot but has not voted thereon may vote in person at the precinct election polls on the day of election, upon surrender and cancellation of the unvoted ballot. Code, 3-6-13. A clerk of the circuit court has no authority to allow the recall of an absent voter's ballot once voted and delivered to him, and there is no authority vested in said clerk by Code, 3-6-5, to receive another absent voter's ballot instead of one theretofore voted, recalled and destroyed. When a person expecting to be absent on election day marks his ballot and delivers it to the clerk of the circuit court, the voter has lost control of the ballot. Respondent having no authority to surrender any absent voter's ballot and permit the voter to substitute another ballot in its stead, he will be required to keep all absent voters' ballots cast in his possession for delivery to the election commissioners of the proper precincts. Code, 3-6-9, and Section 14, Chapter 1, Acts of the Legislature, First Extraordinary Session, 1944. It is established that the respondent keeps ballots which have been voted in a locker to which only he and his deputy have access, and we find no failure on the part of respondent to perform his duty in this respect. A member of respondent's family, without official status, however, has no au-

thority to receive from the post office and have in his possession an absent voter's ballot. Such act should be performed only by the respondent or his deputy, and when such ballot is received it should be placed, with reasonable dispatch, in a secure place, as hereinabove indicated.

A voter who has suffered a physical disability may have that fact noted on his registration record at any time except the two weeks immediately preceding the election. Section 29, Article 2, Chapter 43, Acts of the Legislature, 1941. Any person unable to write may also receive assistance from poll clerks. Section 21, Article 5, Chapter 44, Acts of the Legislature, 1941. In the case of *Huffman, et al.* v. *O'Brien, et al.*, not reported, decided August 1, 1942, this Court had under consideration the question of assistance to be given physically disabled and illiterate voters, and wherein it was ordered that the right of any physically able and literate voter to receive assistance in preparing his ballot should be challenged "* * * except where such physical disability developed after the date of the voter's registration, and the voter was unable to have his registration record corrected in accordance with Section 29 of Chapter 43 of the Acts aforesaid, * * *." The same principle is applicable to a voter who appears in person in the office of the clerk of the circuit court to cast an absent voter's ballot. The statutes above mentioned are designed to eliminate a long-standing abuse and should be rigorously enforced by officials authorized by law to receive a voter's ballot.

A voter casting an absent voter's ballot in the office of the clerk of the circuit court should be afforded the necessary means and facilities to exercise his constitutional right to vote a secret ballot if he so desires.

There is evidence tending to show that on three occasions respondent permitted assistance to be given to persons in marking their ballots in his office, and thereafter received such ballots presumably for transmission to election commissioners of the proper precincts. A majority of the Court is of the opinion that the record herein suffi-

ciently establishes the fact that respondent has permitted assistance to be given to voters having no right thereto, and that he should be required by the writ hereinafter awarded to see that no assistance is given to any literate and physically able person preparing an absent voter's ballot in his office, and the said writ will embody that requirement. I am not in accord with the opinion of the majority on this phase of the case for reasons hereinafter stated.

The remaining charges of dereliction relate to the alleged refusal of respondent to allow two soldiers, who were duly registered, to cast absent voters' ballots. One of the soldiers above referred to made application in person for an absent voter's ballot, and was informed by respondent that a ballot had been mailed to the camp where the soldier was stationed. On being so informed the soldier said that he would vote and mail the ballot on his return to his station, which has been done and such has been received by respondent. Consequently, there has been no failure on respondent's part to perform his duty in that respect. The other soldier came to respondent's office with a voter's registration card and applied for an absent voter's ballot, and from questions asked by respondent it was developed that the soldier was a native of Braxton County, having been inducted into the army from that county two years before, and that he had been in Putnam County two days at the time of his application for an absent voter's ballot. Respondent requested the prosecuting attorney of the county, then and there present, to advise him if the soldier's residence in Putnam County was sufficient to entitle him to vote. The prosecuting attorney, after questioning the soldier, told him to vote if he wished, but that if he, the prosecuting attorney, desired to take any action with respect to the voting by the soldier, he would do so later. The soldier then inquired as to the identity of the questioner, and, on being informed that he was the prosecuting attorney of the county, hurriedly left the office and did not return. Respondent and the prosecuting attorney both testified that

the soldier was tendered a ballot and that he refused to vote. The questioning of the soldier when he applied for an absent voter's ballot was neither proper nor pertinent, and the incident just described clearly shows the necessity of an investigation of the registration records in the office of the clerk of the county court as hereinabove discussed. It is clear that if the soldier had not been a *bona fide* resident of Putnam County for sixty days next preceding the election to be held on November 7, 1944, he was not entitled to register and vote in that county. He made application for an absent voter's ballot on September 11, 1944, and the record herein shows that he had only been a resident of the county at that time for two days. Assuming that the soldier came into Putnam County on September 9, 1944, and that he established a residence at that time, his right to vote in Putnam County was questionable. Nevertheless, his right to vote should not have been questioned, but his ballot should have been received, subject to challenge, and the validity thereof determined by the election commissioners. It is the duty of the respondent to furnish absent voters' ballots to any person who is properly registered as a voter and makes application therefor, and such duty may be enforced by mandamus. The majority of the Court is of the opinion that respondent did not perform his duty in this respect. I am not in accord with the views of the majority on this phase for reasons to be hereinafter stated.

In accord with the foregoing a peremptory writ of mandamus is awarded directed to respondent requiring and commanding:

(1) That upon receipt of request for an absent voter's ballot he shall send such request to the Clerk of the County Court of Putnam County, for such action as is required by Section 10, Chapter 1, Acts of the Legislature, First Extraordinary Session, 1944;

(2) That respondent keep securely in his possession until delivery thereof to election commissioners of the proper precincts all absent voters' ballots which have been voted and received by him, and shall not permit any voter to

withdraw any ballot so cast and substitute another ballot therefor;

(3) That respondent see that no assistance is given to any literate and physically able person casting an absent voter's ballot in his office; and

(4) That upon request of any person duly registered as a voter in his county he shall deliver to such person an absent voter's ballot and upon compliance with the other provisions of law relative to casting the same, respondent shall receive and keep securely such ballots, subject to challenge, to be delivered to the election commissioners of the proper precincts.

In my opinion the writ of mandamus should issue requiring the respondent to send requests for absent voters' ballots to the clerk of the county court, and that respondent having received one ballot marked and cast by an absent voter should not permit the same voter to cast another. But I do not believe the facts established by the record show that respondent has permitted assistance to be given to voters casting ballots in his office who are not entitled to receive such assistance. I am further of the opinion that the writ should not issue as to the failure of respondent to furnish a ballot to the soldier who was questioned by the respondent and prosecuting attorney. It is apparent to me that the questioning of the soldier was justified in a measure by the fact that the soldier made a hurried departure and did not return to exercise his right to vote. Furthermore, there is no showing in the record that respondent refused to deliver a ballot to him.

*Writ awarded.*