P. L. GALLOWAY

*v.*

THE COMMON COUNCIL OF THE CITY OF KENOVA, WEST

VIRGINIA, AND PAUL SHINGLETON, *et al.*

(No. 10182)

Submitted September 7, 1949. Decided December 6, 1949.

LOVINS, JUDGE, not participating.

*Buford C. Tynes,* for petitioner.

*Okey P. Keadle,* for defendants.

HAYMOND, PRESIDENT:

This is an original proceeding in mandamus instituted by the petitioner, P. L. Galloway, against the common council of the City of Kenova, West Virginia, a municipal corporation, and its members, Paul Shingleton, Mayor, and Oscar Hampton, J. B. Pennington, W. T. Moore and W. T. LeMaster, Councilmen, and Paul Shingleton, individually, as defendants, to compel the members of the council, sitting as a board of canvassers, to reconvene and, when so reconvened, to count for the petitioner six challenged ballots rejected by the board upon a recount of the ballots cast at a regular municipal election held June 14, 1949, at which the petitioner and the defendant Shingleton, to whom the board issued a certificate of election, were the opposing candidates for the office of mayor for a two year term beginning July 1, 1949, and to declare and certify the election of the petitioner to that office.

The case was submitted for decision upon the petition, the answer of the defendants, and the briefs and the oral arguments of counsel for the respective parties.

The material facts are not in dispute and the questions presented involve the determination of the true and correct result of the election between the two candidates for the office of mayor.

On May 3, 1949, several weeks before the election, the common council of the city passed an ordinance which adopted the permanent municipal registration list of the voters in the precincts in the city, certified and furnished by the clerk of the county court, as the official registration list for the ensuing municipal election, as provided by Section 14, Article 3, Chapter 44, Acts of the Legislature, 1941, Regular Session, repealing and reenacting Section 14, Article 3, Chapter 8 of the Code, which section of the Act of 1941 declares that it shall be the duty of each municipality by ordinance to make provision for integrating the conduct of all municipal elections with the system of "Permanent Registration of Voters."

According to the certificates of the election officers for the five voting precincts in the municipality, 813 ballots were cast for the petitioner and 818 ballots were cast for the defendant Shingleton; and 18 challenged ballots were certified to the board of canvassers.

On June 20, 1949, the council, sitting as a board of canvassers, met and canvassed the election returns, including the ballots cast other than the 18 challenged ballots, and denied the separate motions of the petitioner that it inspect those ballots and count some of them for the petitioner and reject other such ballots, and that the petitioner be permitted to introduce evidence to show that the names of the voters of some of the challenged ballots appeared on the registration records in the office of the county clerk for use in county and state elections. The board then found that the petitioner had received 813 votes and that the defendant Shingleton had received 818 votes, ascertained and certified the results of the election as to candidates for the other offices and other issues voted for, recorded the demand of the petitioner for a recount, and adjourned until June 27, 1949.

At its session on June 20, 1949, the board denied the motions of the petitioner that it consider the validity of the challenged ballots and at its session on June 27, 1949, it refused to count eleven of such ballots, in which were

included five of the six ballots hereinafter referred to which are directly involved in this proceeding.

The session of the board on June 27, 1949, was adjourned until its final session of June 29, 1949, at which time the board, upon motion of the petitioner, entered the notation upon the minutes of its meeting that six voters, William Deskins, Geraldine Deskins, City Precinct No. 5, W. R. Osburn, City Precinct No. 4, George Rutherford, City Precinct No. 5, Ona Rutherford, City Precinct No. 3, and Charley Watts, City Precinct No. 4, had cast challenged ballots for the petitioner. The board, however, denied the separate motions of the petitioner to summon the clerk of the county court to show by the registration records, of the county that the above named six voters were listed on the registration records used in county and state elections, to determine from such evidence whether the ballots of those six voters should be counted for the petitioner, and to suspend the proceedings until it could consider and pass upon those matters. The board then conducted a recount of the ballots cast at the election which had been demanded by the petitioner but had not been demanded by the defendant Shingleton. After the count of the ballots cast at Precinct 5, 4 and 2, in that order, had been finished, the petitioner informed the board that he did not desire a count of the ballots cast at Precincts 1 and 3; but upon motion of the defendant Shingleton, and over the objection of the petitioner, the board completed the recount and included in it the ballots cast at those two precincts. Upon the completion of the recount of all the votes cast, during which recount the board refused to count the six challenged ballots cast for the petitioner, the board found that the petitioner had received 807 votes and the defendant Shingleton 810 votes, a majority of 3 votes for him, and directed that he be issued a certificate of election for the office of mayor of the city.

The petition admits that the names of the persons who cast the six challenged ballots did not appear on the municipal registration record used at the election. The petitioner, however, bases his right to relief in this pro-

ceeding upon the ground that the six challenged ballots cast for him by William Deskins, Geraldine Deskins, W. R. Osburn, George Rutherford, Ona Rutherford and Charley Watts, whose names appeared on the registration records to be used at county and state elections, which ballots were not counted, should have been counted for him and that if those ballots, or as many as four of them, are counted for him they will change the result of the election.

In support of this position, the principal contentions of the petitioner are, in substance: (1) That none of the ballots in question was challenged in the manner provided by law because the challenges were fatally defective as to form and substance and, in consequence, that none of the challenges is valid or effective; and (2) that the registration records to be used in county and state elections, upon which the names of each of the six voters appear as duly registered voters, instead of on the registration records to be used in municipal elections from which their names were omitted, constitute the official registration list for use at the election held on June 14, 1949.

These contentions will be discussed and considered in inverse order to that in which they have been stated.

The pertinent statutes which relate to registration records to be used in elections are Sections 19 and 22, Article 2, Chapter 91, Acts of the Legislature, 1947, Regular Session, and Section 13-a, Article 5, Chapter 44, Acts of the Legislature, 1941, Regular Session. The applicable portions of these sections contain this language:

Section 19: "The registration records to be used in county-state elections shall be kept in a separate file and arranged according to precinct, street and sequence of house, apartment or room numbers, where possible. A duplicate set of these registration records shall be made and kept in a separate file, and shall be arranged in alphabetical order. Such file shall herein be referred to as the 'alphabet file'.

"The registration records to be used in municipal elections shall be kept in a separate file and arranged, where possible, according to precinct, street, and sequence of house, apartment or room numbers."

Section 22: "Each applicant shall fill only one registration form, except in those cases where separate record for municipal elections is required, in which case those registrants who are required to be listed in separate municipal record lists shall fill two forms. The signatures of the applicant on all forms shall be written in ink."

Section 13-a: "At least three days prior to every municipal election other than primary elections, it shall be the duty of the appropriate officer designated by the municipality to procure from the municipal precinct file in the office of the clerk of the county court the registration records necessary for the conduct of such election.

"Such records shall, within ten days after the date of the municipal election, be returned to the office of the clerk of the county court by the appropriate officer or officers designated by the municipality.

"In case of a contested municipal election, the registration record of any challenged voter shall be made available by the clerk of the county court to the officer or tribunal empowered to determine the contest. Such records shall be returned to the office of the clerk of the county court within a reasonable time after the contest shall have been finally decided.

"The clerk of the county court shall acknowledge the release and return of the registration records under this section by the issuance of appropriate receipts.

"In the event any municipal registration record is lost, destroyed, defaced, or worn in any way as to warrant replacement, it shall be the duty of the clerk of the county court to prepare a duplicate of such record and it shall be the duty of the municipality to pay for such replacement."

These statutory provisions plainly indicate that the two

registration records are separate and distinct, and that one shall be used in county and state elections and that the other, when the conduct of a municipal election has been integrated with the system of permanent registration of voters by appropriate action of the municipality, shall be used as the official registration list or record for such election. In considering the official character of the registration record to be used at a municipal election, when such record has been adopted by the municipality, this Court in the case of *Dotson* v. *The Town of Gilbert,* 129 W. Va. 130, 39 S. E. 2d 108, used this language: "* * * the registration records in the office of the Clerk of the County Court of Mingo County provided for municipal elections, as required by Section 13a of Article 5 of Chapter 44 of the Acts of the Legislature of 1941, became the registration record for that election. That registration record, and that record alone, contained the names of the persons legally qualified to vote at the election in the Town of Gilbert on June 5, 1945, and only the voters whose names appeared on that record were entitled to vote at that election. No other person, even though otherwise qualified as a voter, had the lawful right to vote for the candidates on either ticket." It follows that the registration records to be used in municipal elections mentioned in the quoted provisions of Sections 22 and 13a, not the registration records to be used in county and state elections, constituted the official registration list or record for the election held in Kenova on June 14, 1949, and that the persons who cast the six challenged ballots for the petitioner were not entitled to vote at that election for the reason that their names did not appear on that registration list or record.

In considering the contention of the petitioner that the challenges directed to the six ballots in dispute are not valid because fatally defective in form and substance, it should be noted that the challenges actually used are not incorporated in the record. Instead only the specimen form for challenging election ballots, with the blanks unfilled, is presented. The only information provided, concerning the contents of any of the six challenges made against the

ballots in controversy, is that the challenges to the two ballots cast by William Deskins and Geraldine Deskins indicated that before the election these persons had moved to the State of Kentucky and had ceased to reside in the precinct in which their ballots were cast.

The statute provides that it shall be the duty of the receiving board to challenge the right of any person, requesting a ballot, to vote in an election, if the registration record of such person is not available at the time of the election, or if the signature written by such person in the poll book does not correspond with his purported signature on the registration record, or if his registration record indicates any other legal disqualification; that the person so challenged shall be permitted to vote in the election but shall be given a ballot not endorsed by the poll clerks; that in lieu of such endorsement, the poll clerks shall fill and sign an appropriate form indicating the challenge, the reason for the challenge, and the name or the names of the challengers; and that the form shall be securely attached to the ballot and deposited with it in a separate box or envelope marked "challenged ballots". Sections 25 and 25-a, Article 5, Chapter 44, Acts of the Legislature, 1941, Regular Session.

The statute also provides that the ballot of any voter challenged according to Sections 25 and 25-a shall not be counted by the election officials; that the county court shall, on its own motion, at the time of the canvassing of the election returns, sit in session to determine the validity of such challenges; that if the county court shall determine that the challenges are unfounded, the ballot of each challenged voter, if otherwise valid, shall be counted and tallied together with the regular ballots cast in the election, and that, in such determinations, the county court shall disregard errors, omissions or oversights, if it can reasonably be ascertained that the challenged voter was entitled to vote. Section 31-a, Article 5, Acts of the Legislature, 1941, Regular Session.

The charter of the City of Kenova provides that the

common council of that municipality shall canvass all election returns, conduct all recounts and hear and determine all contests in the same manner, and under the same rules of procedure as are now, or may hereafter be, required by general law with respect to county offices. Section 13, Chapter 16, Acts of the Legislature, 1927, Regular Session, Municipal Charters.

From the foregoing statutory provisions it is clear that the challenges made against the six questioned ballots, as indicated by the incomplete form, did not satisfy any of the requirements of Sections 25 and 25-a and that, for that reason, none of them was valid or effective. It is also clear that the common council, upon the canvass of the election returns, should have passed upon the six challenged ballots. *State ex rel. Bumgardner* v. *Mills,* 132 W. Va. 580, 53 S. E. 2d 416; *State ex rel. Willhide* v. *King,* 126 W. Va. 785, 30 S. E. 2d 234. The insufficiency of the challenges, however, does not mean that the six challenged ballots should be counted for the candidate for whom they were cast. The statute referred to, Section 31-a, Article 5, Chapter 44, Acts of the Legislature, 1941, Regular Session, states that if the challenges are determined to be unfounded, the challenged ballots shall be counted and tallied, "if otherwise valid." Because the voters who cast these ballots were not duly registered by reason of the absence of their names from the municipal registration list or record, they were not entitled to vote at the election and the action of the board of canvassers in refusing to count their ballots upon the recount was correct. *Dotson* v. *The Town of Gilbert,* 129 W. Va. 130, 39 S. E. 2d 108; *State ex rel. Willhide* v. *King,* 126 W. Va. 785, 30 S. E. 2d 234.

As all of the six challenged ballots are invalid and for that reason none of them can be counted or tallied for the petitioner, and as the result of the election can not be changed in his favor, unless at least four of them can be counted for him, the petitioner has not established a clear legal right to the relief which he seeks in this proceeding. In consequence the writ prayed for must be refused.                                    *Writ refused.*