STATE *ex rel.* R. DE WITT PECK, *et. al.*

*v.*

THE CITY COUNCIL OF THE CITY OF MONTGOMERY, A CORPORATION, AND WILLIAM CARSON, *et al.,* AS COUNCILMEN, *etc.,* AND B. W. CRANE, *et al.*

(No. 12553)

Submitted April 19, 1966.          Decided June 14, 1966.

*Gordon Billheimer, Cleo S. Jones,* for relators.

*R. J. Thrift, Jr., George L. Vickers,* for respondents.

BERRY, JUDGE:

This proceeding in mandamus instituted under the original jurisdiction of this Court by the petitioners, R. De Witt

Peck, Republican candidate for mayor, and C. L. Kennedy, R. C. Skaggs, Joseph Lawrence, C. W. Bailey, George John, candidates for Council for the City of Montgomery who were all the unsuccessful candidates on the Republican ticket opposing several Democrats made defendants, was directed against defendants consisting of The City Council of the City of Montgomery, a corporation, and William Carson, Michael Kandel, Pete Craffey, J. W. Riccardi, B. W. Crane and Thomas Carter, as Councilmen, and, as such, ex officio Members of the Board of Canvassers of said City, and B. W. Crane, Thomas Carter, Frank Divita, Pete Craffey, W. G. Phillips and Hayworth Gore, as Councilmen of the City of Montgomery, and ex officio Members of the Contest Board of the City of Montgomery, and involves a municipal election held at the City of Montgomery, West Virginia, on January 6, 1966. The prayer of the petition is for a writ of mandamus to command the Board of Canvassers to reconvene and disallow certain votes that were counted for the Democratic candidate Crane, resulting in his being declared elected mayor for the City of Montgomery, and to instruct the said Board of Canvassers that R. De Witt Peck had been elected mayor of the City of Montgomery, and, further, to direct the members of the contest board who were the declared winners of the election, to show cause why they should not be disqualified from acting as members of the contest board and directing them in the event they do serve as members of the contest board to disallow the votes covered herein. Also, to direct the recorder to furnish to this Court the challenged ballots, absentee ballots, and disputed ballots concerned herein, and to transmit to this Court a transcript of the testimony taken before the board of canvassers and the registration books of the City of Montgomery.

A rule was issued by this Court returnable April 19, 1966 on the April Special Docket at which time the case was submitted for decision upon arguments and briefs.

Mandamus is the proper remedy to compel a canvassing board in a municipal election to perform its duties. *Adams*

v. *Londeree,* 139 W. Va. 748, 83 S. E. 2d 127; *Galloway* v. *Common Council of City of Kenova,* 133 W. Va. 446, 57 S. E. 2d 881; *State ex rel. Hammond* v. *Hatfield,* 137 W. Va. 407, 71 S. E. 2d 807; *State ex rel. Willhide* v. *King,* 126 W. Va. 785, 30 S. E. 2d 234.

It will be noted that although the unsuccessful candidates for Council are parties to this proceeding no relief is requested in the prayer as to them.

The record of the proceedings with exhibits presented to this Court is very confusing. It is difficult to ascertain exactly what, where, and by whom various things were done. The canvass conducted by the City Council was apparently used as a recount, which was improper, and although a recount was requested, it merely adopted and incorporated the proceedings before the canvassing board. However, it appears that the City Council, acting as a board of canvassers, did canvass the votes and the tabulation indicated that the Democratic candidate for mayor was the winner by a vote of 508 to 503; and that the result of the recount was 510 to 502 in favor of the Democratic candidate, but although the transcript labels certain proceedings as a recount, the same evidence obtained before the canvassing board was used for the recount. The duties of the board of canvassers are provided in the statute, and such board can do only what it is authorized to do. Code, 3-6-9, as amended. Its primary duty is to ascertain and declare the true results of an election according to the precinct election returns, that is, from the tally sheets and certificates made by the precinct officials and the other records used in connection with the election and the packages of ballots voted therein. *State ex rel Bumgardner* v. *Mills,* 132 W. Va. 580, 53 S. E. 2d 416. It merely ascertains the number of ballots cast as indicated by the returns and determines whether the challenged ballots should be counted or not counted. If a recount is requested *before* the result is declared, the sealed packages of ballots may be opened and the ballots themselves counted at a recount, with information obtained and noted on each contested ballot to be used at a contest of the election.

While testimony may be taken at a canvass from officials connected with the election, no extrinsic evidence may be taken or considered either at a canvass or recount. *State ex rel. Bumgardner* v. *Mills, supra; State ex rel. Hammond v. Hatfield,* 137 W. Va. 407, 71 S. E. 2d 807.

A notice of contest of this election has been served on the defendants but the contest has not been held. This proceeding was instituted after the result of the recount was announced. This proceeding only involves twenty-six disputed ballots which were challenged and counted or not counted by the canvassing board at the so-called recount. Fifteen of the challenged ballots to which challenge was attached and which were counted at the canvass and the recount are objected to as being invalid because the voters were not registered in the City of Montgomery. Two of the contested ballots that were not counted are absentee ballots which were opened by the city recorder and sent to the election officers and having thus been handled by someone other than an election official are claimed to have lost their integrity. In one group of three ballots called "challenged ballot No. 6" the challenges made originally to each ballot individually had become separated from the ballot and it was impossible to determine to which ballot each challenge was directed, so these were counted. Four of the ballots that were counted involved voters who were registered in the City but allegedly did not live in the City. Two of the ballots involved disputed markings on the ballots, one of which was counted and the other not counted. It is conceded by the petitioners that one of these ballots labeled as disputed ballot B in Precinct 14, which was counted for the Democratic candidate, should have been counted. In other words, it was correctly counted and is eliminated from consideration in this proceeding.

The fifteen ballots which were challenged on the grounds that the voters were not registered in the city registration books, although residents of the City of Montgomery, are as follows: Two from Precinct No. 71, two from Precinct

No. 72, eight from Precinct No. 73 and three from Precinct No. 74. They will be combined in the disposition of this case.

Although there is a state law requiring permanent registration throughout the state and all its subdivisions, Code, 3-2-3, as amended, and providing for the registration forms to be used and kept for municipal elections, Code, 3-1-27, as amended, and Code, 3-2-15, 19, as amended, it has been held that in order to make these laws applicable for municipal registration an ordinance must be passed by the municipality implementing the state law and integrating the city registration with the state law, and if no such ordinance is passed by the municipality any person who lives in the city for the time required by law is eligible to vote in such municipal election. *Pridemore* v. *Fox*, 134 W. Va. 456, 59 S. E. 2d 899. This matter is clearly stated in the third point of the syllabus of the *Pridemore* case, wherein it is said: "In the absence of the adoption of an ordinance by the governing body of a municipality, or a charter provision to the same effect, required by Section 14, Article 3 of Chapter 8, of the Code as last amended by Chapter 44, Acts of the Legislature, 1941, providing for the integration of municipal registration of voters with the 'Permanent Registration System' of the State, failure of the voters of a municipality to register as such, on the municipal registration books set up in the office of the Clerk of the county court of the county wherein the municipality is located, does not deprive them of the right to vote in a municipal election held in the municipality in which they reside, and in which they are otherwise qualified to vote." It is the contention of the petitioners that the *Pridemore* case is not applicable to the case at bar, because there is a provision in the municipal charter relative to the registration of voters in the City of Montgomery. However, the provision in the city charter of Montgomery relative to this matter provides that: "The council shall by ordinance provide such regulation for the registration of voters as the state law may require." It can readily be seen that the quoted provision is based on the state laws pertaining thereto and specifically requires an

ordinance to implement it, which is in accordance with the holding in the *Pridemore* case. As a matter of information, the code sections referred to in the *Pridemore* case were renumbered by the complete revision of election laws passed as Chapter 64, Acts of the Legislature, 1963, regular session, but the wording is still essentially the same.

It is also the contention of the petitioners that it should be presumed that such ordinance had been enacted, because it is presumed that the city officials would have performed their duties. For several reasons, this contention cannot help petitioners. There is negative evidence in the record that no such ordinance ever existed. Although to explain the absence of an ordinance it is claimed that the ordinances of the city were burned in 1945, the record stipulates that some of the records were burned, but does not refer to ordinances. Also, ordinances were reenacted and passed by the city in 1947 but this ordinance is not among them. In any case when a municipal ordinance is to be considered by this Court, it must be proved because even assuming there was an ordinance we could not tell what it contained unless it was properly proved, setting out the provisions thereof. *Barniak* v. *Grossman*, 141 W. Va. 760, 93 S. E. 2d 49; *Nesbitt* v. *Flaccus*, 149 W. Va. 65, 138 S. E. 2d 859; *Boyland* v. *City of Parkersburg*, 78 W. Va. 749, 90 S. E. 347; *Ray Elswick Jr.* v. *Charleston Transit Co.*, 128 W. Va. 241, 36 S. E. 2d 419. Therefore, under the law applicable to such case where a municipal ordinance has not been passed to implement and integrate the registration for a municipality, the only qualification that can be imposed upon a voter is that he live in such municipality for the requisite period as required by law. Under this ruling any of the fifteen disputed votes, even though there was non-registration of voters who lived in Montgomery, were properly counted by the canvassing board and at the so-called recount in the absence of evidence that the voter had not lived in the city a sufficient time.

At least two of the votes involved in the fifteen mentioned votes were questioned on the grounds that the voters had

not resided in the city of Montgomery for a period of six months as required by the charter. These appear to be involved in "challenged ballot No. 6" involving ballots 1, 2 and 5 in Precinct No. 74, which challenges were mixed up and it could not be determined whether they were related to not being registered or to not having lived in the city for the six months period. However, Article 4, section 1 of the Constitution of West Virginia provides that a person must reside in the state for a year and in the county for a period of sixty days next preceding an election in order to be eligible to vote in the State of West Virginia. It has been held that this time requisite regarding counties applies to cities and can not be diminished or increased in order to establish the qualifications of a voter to vote in an election in this state, whether county or city. *State* v. *Edwards,* 95 W. Va. 599, 122 S. E. 272; *Brannon* v. *Perkey et al.,* 127 W. Va. 103, 31 S. E. 2d 898, 158 A. L. R. 631; *State ex rel. Lawhead* v. *County Court of Kanawha County, et al.,* 129 W. Va. 167, 38 S. E. 2d 897.

There is also a statute applicable to the entire state which is in conformity with the provisions of the Constitution and provides that in a municipal election a person must have been a resident of the state for one year and in the municipality in which he offers to vote for a period of sixty days next preceding the election. Code, 3-1-3, as amended. Therefore, the provision in the city charter requiring the six months' residency before a person is eligible to vote in the municipal election in the city of Montgomery is invalid because such qualifications can not be in violation of the general law and the Constitution of the State of West Virginia.

Challenged ballot No. 1 in Precinct No. 71 cast by Leonard Wade and challenged ballot No. 2 in Precinct No. 71 cast by Fred Ratliff were challenged on the grounds that these voters were not registered in the City of Montgomery and there was discussion before the Board as to whether they lived in the City. The registration card which was filed as an exhibit showed that Wade's residence was Eagle, West Virginia, in Precinct No. 76, but he had apparently changed

or moved to Precinct No. 71 which is located partially within the corporate limits of the City of Montgomery. The registration card of Ratliff, which was filed as an exhibit, indicates that he had lived at Crescent in Precinct No. 76 and had moved to Precinct No. 71, which is partially located in Montgomery. The canvassing board properly counted these ballots, because it would necessitate extrinsic evidence to prove whether these voters lived in Montgomery, or outside of Montgomery, and the only way final disposition could be made as to whether these ballots should be counted would be to determine the matter in a contest. *State ex rel. Bumgardner* v. *Mills, supra; State ex rel. Hammond* v. *Hatfield, supra.*

Challenged ballot No. 3 in Precinct No. 71 and challenged ballot No. 4 in Precinct No. 71 both involve absentee ballots which were received by the recorder, opened by him, and then sent to the election officers in Precinct 71. These ballots were properly not counted by the canvassing board. They had lost their integrity by virtue of not being properly handled as provided for in Code, 3-3-6, 7 and 8, as amended. Absentee voters ballots should remain in a sealed envelope and be delivered to the election officers in that same manner. *State ex rel. Matthews* v. *Anderson,* 127 W. Va. 147, 31 S. E. 2d 779; *State ex rel. Bumgardner* v. *Mills, supra.*

Challenged ballot A in Precinct 14, which was not counted by the canvassing board for either party, bears "X-marks" in both the straight Democratic and Republican ticket circles and also for both the Democratic and Republican candidates for mayor, as well as for the Democratic candidate for recorder, who was unopposed, and one Democratic candidate and five Republican candidates for council. The X-marks in the Democratic circle and squares are not as clear as those in the Republican circle and squares. In fact, the marks on the Republican side are bold X-marks extending beyond the square in each instance, and appear to have been made by a different pencil or marker. The marks in the circle and square on the Democratic side are dim and could have been made by light strokes, or as a result of an attempt to erase heavier marks. The intent of the voter can not

be ascertained with any degree of certainty and the ballot was properly not counted by the board of canvassers. *State ex rel. Hammond* v. *Hatfield,* 137 W. Va. 407, 71 S. E. 2d 807.

Challenged ballot B in Precinct No. 14 is marked in the Democratic straight ticket circle with a heavy lead pencil with an "X" and then about half of the X is scratched over by additional heavy lead pencil marks, although the X is still visible. This ballot was counted, and although the validity of it is very questionable, the petitioners concede that this disputed ballot should have been counted by the board. See *State ex rel. Hammond* v. *Hatfield, supra.*

We now come to the remaining four contested ballots, which are: Ballot No. 3 in Precinct No. 14, cast by Ira Saunders, Ballot No. 4 in Precinct No. 14 cast by Thomas B. Davita; Ballot No. 5 in Precinct No. 14 cast by Kathryn Wills; and Ballot No. 6 in Precinct No. 14 cast by Gordon Wills. All of these ballots were challenged on the ground that these voters had moved out of the City of Montgomery before the election. Affidavits in these instances were presented with the challenged ballots.

If these affidavits were made by any person other than the election officer they would constitute extrinsic evidence and could only be disposed of at a contest of the election. *State ex rel. Bumgardner* v. *Mills, supra.* If these voters were not residents of Montgomery at the time of the election and had not established residence for a period of 60 days next preceding the election, they would not be entitled to vote and their votes should not be counted. It is difficult to determine what the situation was with regard to these voters, and to say the least, it is quite confusing. If the affidavits were made by the election officers, they could be considered by the canvassing board, but the evidence of anyone else would be considered as extrinsic evidence and could be considered only in an election contest. However, the reason for the challenge is apparently denied by the defendants and this will of course necessitate extrinsic evidence in order to ascertain whether or not these voters were

eligible to vote in the city election of Montgomery. Although before a person is eligible to vote he must be a resident of the city for a period of 60 days, he may be temporarily away from the city for a period of time and still retain his residency in said city and be eligible to vote there. See *State ex rel. Willhide* v. *King*, 126 W. Va. 785, 30 S. E. 2d 234. It is difficult to ascertain from the record the exact status of these four votes. If these voters moved out of the city before the election and did not intend to retain their residency in the City of Montgomery they would not be eligible to vote and their vote should not have been counted by the canvassing board. However, if these facts are to be ascertained by extrinsic evidence they were properly counted by the canvassing board. *State ex rel. Bumgardner* v. *Mills, supra.*

We have now discussed the entire twenty-six disputed ballots in this proceeding, and even if the last four ballots discussed herein should not have been counted the result of the election declared by the board of ballot commissioners at the recount would not be changed, because the Democratic candidate for mayor, B. W. Crane, would still have prevailed by a margin of four votes.

Many of the questions we have discussed, and perhaps others not discussed in this case, can be and should be disposed of in a contest of the election and not in a mandamus proceeding. The petitioners pray that the defendants who were declared elected mayor and members of the council by the board of canvassers be disqualified from acting as members of the contest board in the performance of its duty which is properly to dispose of the disputed votes where extrinsic evidence is necessary for the disposition thereof. This request is without merit, because there is no other body to act as a contest board in such cases, and the statute provides that all contested municipal elections shall be heard and decided by the council. Code, 8-3-6. It has been held that a municipal council has original and exclusive jurisdiction to hear and decide contested elections involving the selection of municipal officers. *Evans* v. *Charles*, 133 W. Va. 463, 56 S. E. 2d 880.

It is also the contention of the petitioners that all of the votes cast in Precinct No. 73 should be disallowed because the incumbent Mayor, B. W. Crane, who was not a candidate to succeed himself, acted as an election officer in Precinct No. 73, as well as a member of the board of canvassers in the canvass and recount. This question has heretofore been answered and since there is no allegation charging fraud or misconduct in connection with his being an election officer in Precinct No. 73, or that the result of the election would be changed in any manner, it will not be considered under the circumstances. *Pridemore* v. *Fox*, 134 W. Va. 456, 59 S. E. 2d 899.

Therefore, the petitioners not having a clear legal right to the writ of mandamus, the writ is denied.

*Writ denied.*