J. L. DOTSON, JR., *et al.*

*v.*

THE TOWN OF GILBERT, *etc., et al.*

(No. 9768)

Submitted April 16, 1946.   Decided June 18, 1946.

*Lafe B. Chafin,* for plaintiffs in error.

*J. Brooks Lawson* and *Harry W. Hill,* for defendants in error.

HAYMOND, JUDGE:

This writ of error involves the determination of the result of an elecion between rival candidates of two political parties for the offices of Mayor, Recorder, and Councilmen of the Town of Gilbert in Mingo County, West Virginia.

On June 5, 1945, an election was held in that municipality to choose its officers for the regular two year

terms provided by law. At the election, two poltical parties in the municipality, the Peoples Party and the Independent Party, had complete tickets of candidates for each of the offices to be filled by the qualified voters of the town. One hundred and sixty-nine unchallenged ballots were cast, which when counted and certified by the election officers, indicated the election of all the candidates of the Peoples Party. There were seventy-two challenged ballots which were not counted or included by the election officers in the certificate of the returns.

At the meeting of the Council of the town, sitting as a Board of Canvassers, on June 11, 1945, the seventy-two challenged ballots and the one hundred and sixty-nine unchallenged ballots were counted and tabulated. That action resulted in the election of the candidates on the Independent Party ticket to the offices of Mayor, Recorder, and three Councilmen. The canvass revealed that as to the other two offices of Councilmen, one candidate on the Independent Party ticket and two candidates on the Peoples Party ticket each received one hundred and seventeen votes. The Board of Canvassers, resolving the tie, declared the candidate of the Independent Party and one of the two candidates of the Peoples Party elected to those two offices.

On June 22, 1945, the candidates on the Peoples Party ticket presented their petition to the Circuit Court of Mingo County against the Town of Gilbert, its Mayor, its Recorder, and the five members of its Council, in which the petitioners prayed for a writ of mandamus to require the respondents forthwith to reconvene as a canvassing board, and, upon so doing, to reject certain specified challenged ballots, to revoke the challenged certificates of election issued by the recorder, and to issue certificates of election to each of the petitioners. A rule having issued upon the petition, the respondents appeared in open court on June 26, 1945, and filed their demurrer and their answer to the petition. The demurrer was overruled and the proceeding was heard by the court

upon the petition, the answer, and the general replication of the petitioners. The writ as prayed for was granted by the court by order entered June 26, 1945. To that judgment a writ of error was awarded the respondents by this Court.

The controlling question is whether the ballots cast by fifty-three voters, whose names did not appear upon the permanent registration records in the office of the Clerk of the County Court of Mingo County at the time of the election, are legal and valid ballots and should be counted.

It is established that of these fifty-three voters forty-two cast straight Independent Party ballots, one cast a straight Peoples Party ballot, and the remaining ten cast mixed ballots; and that if all these ballots should be rejected as illegal each of the petitioners, who constitute all the candidates on the Peoples Party ticket, would have received a majority of the votes cast at the election and, as a consequence, would be entitled to a certificate of election to the office for which each was a candidate. It is stipulated by the attorneys for the respective parties that all who cast the fifty-three ballots are qualified voters of the Town of Gilbert unless the absence of their names from the permanent registration records disqualifies them as voters at the election.

The Town of Gilbert has no special charter. It was created about twenty-five years ago and it exists and operates under the general statutes of this state.

On May 7, 1945, less than thirty days before the election to be held on June 5, 1945, the Council passed an ordinance relating to the election. It consists of three short sections and contains this language:

"SECTION 1. That the election to be held on June 5, 1945, for the Town of Gilbert shall be held and conducted according to the provisions of Chapter 3 of the Code of West Virginia, except as hereinafter provided.

"SECTION 2. Citizens of the Town of Gilbert, over twenty-one years of age, who have been a resident of this State for one (1) year, and of the Town of Gilbert for sixty (60) days prior to June 5, 1945, shall be permitted to vote at the town election to be held on June 5, 1945, and the Commissioners of Election, appointed by the Town Council, shall be the sole judge of the voters' qualifications.

"SECTION 3. The mode of voting shall be by· ballot but the voter shall be left free to vote by either open or secret ballot as he may elect."

At a meeting of the Council, on June 2, 1945, less than three days before the election, two registrars were appointed, one from the Independent Party and one from the Peoples Party, to register the voters of the town, and to report the list to the Council at a meeting on June 4, 1945. The appointee from the Peoples Party failed or refused to serve. A registration list, however, was prepared by the other registrar, which list was accepted by the Council at the meeting on June 4, 1945. This list contained the names of at least forty of the fifty-three voters whose names did not appear on the permanent registration records.

Though Section 1 of the ordinance indicates that exceptions to the provisions of Chapter 3 of the Code of West Virginia would be stated in the subsequent sections, no specific exceptions are incorporated within their terms, unless the language of Sections 2 and 3 may be so considered. The provisions of Section 2, however, are in conflict with the provisions of Chapter 3 of Code of West Virginia, 1931, as amended, which, when the ordinance was passed, included both Chapter 43 of the Acts of the Legislature of 1941 and Chapter 50 of the Acts of the Legislature of 1943, to the extent that they disregard the registration requirements for voters incorporated in Chapter 43 of the Acts of the Legislature of 1941, as amended, and undertake to confer authority, not given by any section of that chapter of the Code, upon the Commissioners of Election. Code, 8-3-16, expressly provides that any municipality, not having a special charter, may

prescribe the method of nominating its officers and holding its elections, but that such method shall not be inconsistent with any general provisions of law.

By Chapter 43 of the Acts of the Legislature of 1941, as amended by Chapter 50 of the Acts of the Legislature of 1943, and by Chapter 62 of the Acts of the Legislature of 1945, the Legislature of this state has provided a comprehensive system for the registration of voters. Various sections of the statutes contain detailed provisions which deal with that subject. Section 1 of Article 1 of the Acts of the Legislature of 1941, extends the provisions of the act, unless restricted by the context, to every election in which candidates are nominated or elected or in which the electorate passes upon any public question submitted to it, except that its provisions shall be construed to be operative in municipal elections only in those instances in which they are made expressly applicable. Section 1a of the same article, after declaring that citizens of the state shall be entitled to vote at all elections, including primaries held within the precincts of the counties and the municipalities in which they respectively reside, expressly states that no person, who has not been registered as a voter as required by law, or who is a minor, or of unsound mind, or a pauper, or who is under conviction of treason, felony or bribery in an election, or who, in the case of state and county elections, has not been a bona fide resident of the state for one year and of the county in which he offers to vote for sixty days next preceding such election, or who, in the case of municipal elections, has not been a bona fide resident of the state for one year and of the municipality in which he offers to vote for sixty days next preceding such election, shall be permitted to vote at such election while such disability continues.

Section 1 of Article 2 of Chapter 43 of the Act of the Legislature of 1941 states that the purpose of the article is to establish a uniform permanent registration system for all elections within the state. Section 2 of Article 2

defines many terms used in the statute, and declares that the words "any election" or "all elections" shall include every general, primary, or special election held in this state, or in any of its subdivisions, for the purpose of nominating or electing federal, state, county, city, town or village officers of any subdivision now existing or hereafter created. It defines subdivision as meaning any county, city, town, village, or other unit in which voters are authorized to elect public officers or to vote upon public questions submitted to them. Section 3 of Article 2 contains the statement that no voter otherwise qualified shall be permitted to vote at any election unless he shall have been duly registered. Section 4 of Article 2 declares that any person who possesses the constitutional and statutory requirements for voting, except as to age, shall be permitted to register. Section 5 of Article 2 provides for the establishment of a permanent registration system which shall be uniform throughout the state and all its subdivisions. Section 15 of Article 2 declares that the County Court, subject to the authority of the Secretary of State as the chief registration official of the state, shall be the chief registration authority in each county and its subdivisions and confers upon it numerous powers relating to the registration of voters. Section 26 of Article 2 of Chapter 43 of the Acts of the Legislature of 1941, as amended by Section 26 of Article 2 of Chapter 50 of the Acts of the Legislature of 1943, provides that the Clerk of the County Court may register any qualified person and that the registration, or the alteration, correction or cancellation of registration records, shall be carried on throughout the year, except during the thirty days preceding any election. Section 13a of Article 5 of Chapter 44 of the Acts of the Legislature of 1941, declares that at least three days prior to every municipal election other than primary elections, it shall be the duty of the appropriate officer designated by the municipality to procure from the municipal precinct file in the office of the Clerk of the County Court the registration records necessary for the conduct of the election, and that such records

shall, within ten days after the date of the municipal election, be returned to the office of the Clerk of the County Court.

Section 14 of Article 3 of Chapter 44 of the Acts of the Legislature of 1941 declares that each municipality in this state shall, by ordinance, make provision for integrating the conduct of all municipal elections with the system of permanent registration, which ordinances shall, to the extent that they are reasonably applicable, parallel the provisions of Chapter 3 of the official Code of West Virginia which integrate county-state elections with the permanent registration system and that the provisions of that act shall supersede conflicting provisions in existing municipal charters and shall be deemed as amendments to such charters.

There are, of course, numerous provisions of the statutes relating to the permanent registration system other than those already mentioned. Reference to them would unduly lengthen the discussion of this phase of this controversy and is unnecessary in the determination of the decisive question in this proceeding. The references to the foregoing parts of the various acts of the Legislature are sufficient for the purpose of applying the statutes to the facts in this case.

In passing the ordinance of May 7, 1945, and incorporating in it Section 1 which declares that the election of June 5, 1945, should be "held and conducted according to the provisions of Chapter 3 of the Code of West Virginia", the Town of Gilbert undertook to comply with the requirement of Section 14 of Article 3 of Chapter 44 of the Acts of the Legislature of 1941 which enjoins upon municipalities the duty of integrating the conduct of all municipal elections with the system of permanent registration of voters as provided by general law. The ordinance is incomplete in this respect and it fails to comply adequately with the mandate of Section 14 in not providing for the registration of the voters of the municipality by the Clerk of the County Court in the manner specified

by Section 26 of Article 2 of Chapter 50 of the Acts of the Legislature of 1943 and in not adopting and using the registration records for municipal elections designated in Section 19 of Article 2 of Chapter 43 of the Acts of the Legislature of 1941, and provided for in Section 13a of Article 5 of Chapter 44 of the Acts of the Legislature of 1941. Its inadequate action, however, could not absolve it from the obligation imposed upon it by the Legislature. It had no authority to deviate from or to ignore the requirements of the statute. Municipalities have only such legislative powers as are expressly or impliedly delegated to them by legislative acts. *Judy* v. *Lashley,* 50 W. Va. 628, 41 S. E. 197; *State ex rel. Moreley* v. *Godfrey,* 54 W. Va. 54, 46 S. E. 185. No addition to the terms of a statute, delegating legislative power, may be made by construction. *Parkersburg Gas Co.* v. *Parkersburg,* 30 W. Va. 435, 4 S. E. 650; *Bluefield Water Co.* v. *Bluefield,* 69 W. Va. 1, 70 S. E. 772. See *State ex rel. Hatfield* v. *Porter,* 84 W. Va. 399, 99 S. E. 508.

The incomplete and defective action of the Council in enacting the ordinance, however, served to place the municipality within the scope of the permanent registration system established by the Legislature. Though not a complete compliance, it brought the municipality within the purview of the permanent registration statutes and rendered them applicable to the election of June 5, 1945. In consequence the registration records in the office of the Clerk of the County Court of Mingo County provided for municipal elections, as required by Section 13a of Article 5 of Chapter 44 of the Acts of the Legislature of 1941, became the registration record for that election. That registration record, and that record alone, contained the names of the persons legally qualified to vote at the election in the Town of Gilbert on June 5, 1945, and only the voters whose names appeared on that record were entitled to vote at that election. No other person, even though otherwise qualified as a voter, had the lawful right to vote for the candidates on either ticket.

In this connection it is pertinent to refer to and discuss certain statements contained in the opinion of this Court in the recent case of *Hill* v. *County Court of Kanawha Co.*, 126 W. Va. 797, 30 S. E. 2d 239. In that case, a proceeding in mandamus, the relator sought a peremptory writ to require the county court to provide funds and to pay her as a registrar of voters for services performed by her which related only to elections held in a municipality. This Court held that a county court is not liable for the compensation of a registrar of voters who performed services, under Section 27, Chapter 43 of the Acts of the Legislature of 1941, which related solely to municipal elections. Though not made a point of decision, in discussing the question of the applicability of the permanent registration law, Chapter 43 of the Acts of the Legislature of 1941, and of Article 3 of Chapter 44, Acts of the Legislature of 1941, both of which statutes were passed March 6, 1941, to municipal elections, the opinion uses this language: "It is clear that the legislative purpose in enacting the law relative to permanent registration was to make the same applicable to State and county elections, without further legislation, and to municipalities when an ordinance shall have been passed in obedience to the legislative mandate." It also contains the earlier statement: "We have found no clear and definite statutory provision making the Permanent Registration Law applicable to municipal elections where no ordinance has been passed by the municipality." These statements should be modified. They overlook the effect of the provisions of Section 14 of Article 3 of Chapter 44 of the Acts of the Legislature of 1941, which imposed the unqualified duty upon municipalities by ordinance to make provision for integrating the conduct of all municipal elections with a system of permanent registration and require that such ordinances shall, to the extent they are reasonably applicable, parallel those provisions of Chapter 3 of the official Code which integrate county-state elections with the Permanent Registration System, and the effect of the provisions of Section 13a of Article 5 of Chapter 44 of the

Acts of the Legislature of 1941, which impose upon the appropriate officer designated by the municipality the duty, at least three days before every municipal election other than primary elections, to procure from the municipal precinct file in the office of the clerk of the county court the registration records necessary for the conduct of such election.

When these provisions of Chapter 44 of the Acts of the Legislature of 1941 and the provisions of Chapter 43 of the Acts of the Legislature of 1941, are read and considered together, it is evident that the terms of Section 14 of Article 3, and of Section 13a of Article 5, of Chapter 44, Acts of the Legislature of 1941, are applicable to municipal elections, and that their operation would have required the use of the permanent registration records from the municipal precinct file in the office of the Clerk of the County Court of Mingo County in the conduct of the election of June 5, 1945, in the Town of Gilbert, even if the Council of the town, instead of passing an incomplete ordinance, had enacted no ordinance whatsoever. Any other inference or conclusion would produce the intolerable result of permitting the municipality, by disregarding or ignoring the clear mandate of Section 14 of Article 3 of Chapter 44 of the Acts of the Legislature of 1941, and of Section 26 of Article 2 of Chapter 50 of the Acts of the Legislature of 1943, which amended Section 26 of Article 2 of Chapter 43 of the Acts of the Legislature of 1941, to conduct the election with an unauthorized and illegal registration, or with no registration whatsoever, in violation of the election laws of this State. No municipality can take advantage of its own unauthorized or wrongful action. We think the provisions of Section 14 of Article 3 of Chapter 44 of the Acts of the Legislature of 1941, expressly make the provisions of Chapter 43 of the Acts of the Legislature of 1941, which deal with and relate to municipal elections, applicable to such elections.

The list of voters prepared by the representative of the Independent Party, under the direction of the Council

of the Town of Gilbert pursuant to the motion passed at its meeting on June 2, 1945, was unauthorized and invalid. The Council was without power or authority to accomplish the valid registration of voters by that method. The persons whose names appeared on that list, but whose names were absent from the permanent registration records, were not legally registered voters; and, for that reason, they were not entitled to vote at the election of June 5, 1945. It follows that the voters who cast the fifty-three challenged ballots at that election, were not entitled to vote and that all of these ballots, being invalid, should have been rejected.

It is vigorously asserted by the respondents that the rejection of the ballots of these voters results in the disfranchisement of legally qualified voters who were not at fault. This argument overlooks their legal status as voters. The law requires the permanent registration of a person otherwise qualified before he acquires the status of a qualified voter. Unfortunately, and perhaps without any fault upon their part other than their failure to comply with the requirement of the registration statutes, which were enacted to prevent fraud and illegality in elections, these good citizens of the Town of Gilbert were not legally entitled to vote at an election in which the officers of that municipality were selected; and consequently they have been deprived of the exercise of that important privilege of citizenship in that political contest. Section 3, Article 2, Chapter 43, Acts of the Legislature of 1941. A similar contention was urged in the case of *Willhide* v. *King*, 126 W. Va. 785, 30 S. E. 2d 234, and answered and rejected by this Court in these words: "That persons duly qualified to vote, fail to comply with the requirements of the statute in respect to registration, enacted to prevent fraud in elections, and thereby place them in a position where they are not permitted to vote, is regrettable; but as respects requirements of statutes, affecting the action of the voter himself, they are mandatory."

The action of the Circuit Court of Mingo County in awarding the writ of mandamus and in adjudging costs against the respondents was correct and the judgment of that court must be, and it is, affirmed.

*Affirmed.*

LOVINS, JUDGE, concurring in result:

I am of opinion that the judgment of the Circuit Court of Mingo County should be affirmed on the sole ground that the Town of Gilbert, in passing the ordinance on May 7, 1945, quoted in full in the majority opinion, integrated the conduct of elections with the system of "permament registration of voters", as required by Chapter 44, Article 3, Section 14, Acts of the Legislature, Regular Session, 1941. That being true it is entirely unnecessary to discuss a suppositious case where no ordinance has been adopted by the municipality for the purpose of complying with that statute. If no effort had been made by the Town of Gilbert to obey the legislative mandate a question different from that here presented would arise. To put it in different words, it is unnecessary to discant on a case not presented by the record and engage in a discursive discussion with reference to an imaginary case.

The criticism here expressed is grounded on two propositions: (1) That dicta in one case should not be modified by dicta in another; and (2) that the expression in the case of *Hill* v. *County Court*, 126 W. Va. 797, 30 S. E. 2d 239, modified in the instant case, is the true and correct rule which should be applied where no ordinance has been passed by a municipality.

A written opinion accompanying the decision in any case expresses the law of that case only so far as the statements in the opinion are consonant with and necessary to a decision. In this State the Constitution provides that a written syllabus must be prefixed to any opinion handed down by this Court. Constitution of West Virginia, Article VIII, Section 5. Any language contained in the opinion unnecessary to the decision of

the case and not incorporated in the syllabus merely represents the reasoning processes of the particular Judge who wrote the opinion. Needless modification of one opinion by a subsequent one leads to confusion and destroys the stability which is a necessary concomitant of judicial expression. In my opinion a needless modification of an opinion by this Court is exemplified by the majority opinion in *Holley* v. *Baking Co.*, decided March 5, 1946, 128 W. Va. 531, 37 S. E. 2d 729. The absence of any reasons justifying modification of former opinions of this Court made in the *Holley* case, *supra,* are clearly stated in the concurring opinion by Judge Kenna. I do not mean to say that the Court should be averse to making changes in the law, when such changes are called for by conditions in existence at the time the case is presented, but before any change is made in former expressions of the Court the record of the case in which the modification is made should present the question for decision and be necessary for determination of the issues. However, courts should be ever mindful of the broad objective of stability and certainty in judicial expressions. In this case I think the majority opinion ignores that principle, and that the action of the Court increases rather than allays any confusion which is supposed to have arisen from the expressions in the *Hill* case, *supra.* That portion of the opinion herein which modifies certain expressions in the opinion of this Court in the *Hill* case is dicta. The expressions in the *Hill* case which are modified are likewise dicta. We now have an instance of dicta in one case modifying dicta in another. Judicial expression by way of obiter or dictum is seldom justified, should be sparingly used and then *arguendo.*

I think that the opinion in this case which lays down the rule by way of dicta that the Permanent Registration Law applies to municipalities without the passage of an ordinance by the municipality is incorrect. The Permanent Registration Law by the terms of the legislative enactment is made a part of Chapter 3, Code. The provisions of Chapter 3, Code, do not apply to municipal

elections except "in those instances in which they are made expressly applicable." Chapter 43, Article 1, Section 1, Acts of the Legislature, Regular Session, 1941. The provisions of Section 13a, Chapter 44, Acts of the Legislature, 1941, contain directory provisions with reference to the use of municipal precinct registration records, but those provisions do not make the Permanent Registration Law "expressly applicable" to municipalities. Chapters 43 and 44 deal with the same subject matter, were passed at the same session of the Legislature, and must be read and considered together. *State v. Hoult,* 113 W. Va. 587, 169 S. E. 241; *State v. Reed,* 107 W. Va. 563, 149 S. E. 669.

The opinion of the Court in this case rests it conclusions upon Section 14, Article 3, Chapter 44, reading as follows: "It shall be the duty of each municipality by ordinance to make provision for integrating the conduct of all municipal elections with the system of 'Permanent Registration of Voters'. Such ordinances, shall, to the extent that they are reasonably applicable, parallel those provisions of chapter three of the official code, which integrate county-state elections with the 'Permanent Registration System'. The provisions of this act shall supersede conflicting provisions in existing municipal charters and shall be deemed as amendments to such charters." It will be noted that the statute just quoted is made a part of Chapter 8, Code, the title of the Act clearly showing that Section 14, Article 3, Chapter 8 of the Code was repealed, and the quoted statute was enacted in lieu thereof. I can see no repugnancy or inconsistency in any part of Chapters 43 and 44, which were made a part of Chapter 3, Code. Nor can I see any inconsistency between Section 14, Article 3, of Chapter 8, as reenacted by Chapter 44, Acts of the Legislature, 1941, Regular Session, and the other sections of Chapters 43 and 44, Id. The Legislature expressly provided that the provisions of Chapter 3, Code, should not apply to municipalities unless made so by statute and Section 13a of Chapter 43, Acts, 1941, does not make the Permanent Registra-

tion Law expressly applicable. Section 14, Article 3, Chapter 8, as reenacted by Chapter 44, Acts, 1941, does not make the Permanent Registration Law applicable. The last-mentioned statute contains a legislative mandate requiring municipalities to adopt an ordinance integrating municipal elections with the Permanent Registration Law. The Legislature undoubtedly had the power to change municipal charters in this State by the reenactment of Section 14, Article 3, Chapter 8, Code. *Booten* v. *Pinson,* 77 W. Va. 412, 421, 89 S. E. 985. · Moreover, the Legislature had the right to impose the provisions of the Permanent Registration Law on municipalities without the passage of any ordinance, but instead of so doing the Legislature provided that municipalities should adopt ordinances integrating the Permanent Registration system. If the Legislature intended to make the Permanent Registration Law applicable, why require that municipalities adopt an ordinance? The opinion of the Court relies entirely upon Section 14, Article 3, Chapter 8, Code, as reenacted by Chapter 44, Acts of 1941. It seems paradoxical, to say the least, that a statute commanding a municipality to adopt an ordinance for the purpose of making a statute applicable, is a sufficient premise from which to reason that even though no ordinance is passed that said statute applies.

I agree that a municipality cannot take advantage of its own unauthorized or wrongful action, but I do not agree that the legislative enactment made applicable by its very terms upon the condition that a municipality adopts an ordinance, becomes effective without the required municipal action. If the municipality should fail to comply with the provisions of Code, 8-3-14, as amended by Chapter 44, certainly any interested person could compel compliance with the legislative mandate.

For the foregoing reasons I am constrained to say that in my opinion the Court in this case has wholly disregarded the provisions of Chapter 43, Article 1, Section 1, Acts of the Legislature, 1941, and given undue weight to Code, 8-3-14, as amended, and has substituted therefor

an uncertain, illogical and strained application of a clear statutory provision. If it were the intent of the Legislature, as set forth in the opinion herein, there would have been no occasion or necessity for the adoption of any ordinance by a municipality.

I am authorized to say that Judge Kenna joins in this concurring opinion.