SHIRLEY PRIDEMORE

*v.*

MELVIN FOX, *et al.*

(No. 10238)

Submitted April 25, 1950. Decided May 31, 1950.

Lovins, Judge, not participating.

*Mahan, White & Higgins, Charles L. Garvin, Jr.,* and *John G. Fox,* for plaintiffs in error.

*Love & Abbot,* for defendant in error. ·

Fox, Judge:

The Town of Ansted was organized in the year 1891, under the provisions of what was then Chapter 47 of the Code, and has continued as a municipality to this date. On June 7, 1949, proceeding under Code, 8-3-4, an election was held to select a mayor, recorder and five members of the council. The following individuals were candidates for office on what was called the Progressive Ticket, namely: For mayor, Shirley Pridemore, hereinafter called contestant; for recorder, H. F. Stanton; and for members of the council, R. R. Dix, Jesse Keffer, Raymond McGraw, Quenton Britt and Emory Skaggs. On the Peoples Ticket, Melvin Fox was a candidate for mayor; W. D. Skaggs for recorder; and for members of the council, Kenneth Steele,

Chalmer Skaggs, M. L. Alley, Orval Eades and E. R. Vawter, all hereinafter called contestees. In said election, the result was ascertained and declared by the officers who conducted said election, and the candidates on the Peoples Ticket were declared elected. For the office of mayor, Shirley Pridemore received 186 votes, and Melvin Fox 199 votes. For the office of recorder, W. D. Skaggs received 217 votes, and H. F. Stanton 161 votes. For the office of member of the council, Kenneth Steele received 207 votes, Chalmer Skaggs, 199 votes, M. L. Alley, 194 votes, Orval Eades, 192 votes, E. R. Vawter, 188 votes, R. R. Dix, 183 votes, Jesse Keffer, 186 votes, Raymond McGraw, 183 votes, Quenton Britt, 178 votes, and Emory Skaggs, 172 votes.

Within the time prescribed by statute, Shirley Pridemore, a candidate for mayor on the Progressive Ticket, gave notice that he would contest the election of Melvin Fox, W. D. Skaggs, Kenneth Steele, Chalmer Skaggs, M. L. Alley, Orval Eades and E. R. Vawter, for the offices for which they were candidates. No notice of contest was filed by any candidate other than Shirley Pridemore, and he filed such notice, as a candidate for mayor, and as a citizen and legal voter of the Town of Ansted. The contest was heard by the newly elected council, under the provisions of Code, 8-3-6, which provision has been applied by this Court in the case of *Evans* v. *Charles*, 133 W. Va. 463, 56 S. E. (2d) 880. Testimony touching the conduct of the election was heard by the council, and on August 3, 1949, an order was entered by said council holding that the municipal election, of June 7, 1949, was legally held and conducted, and that at such election Melvin Fox was elected mayor, W. D. Skaggs recorder, and Kenneth Steele, Chalmer Skaggs, M. L. Alley, Orval Eades and E. R. Vawter members of the council, to which order Shirley Pridemore objected and excepted at the time. Subsequent to the entry of this order, and on September 20, 1949, the Judge of the Circuit Court of Fayette County, upon the petition of Pridemore, awarded a *writ of certiorari* by which the complete record of all orders and proceedings taken in the election contest aforesaid before the

council of the Town of Ansted were removed and transferred to said Circuit Court. On the 14th day of October, 1949, an order was entered by said Circuit Court in said proceeding finding that Shirley Pridemore, as a candidate for mayor, and as a citizen and legal voter of the Town of Ansted, had the right to contest the election of Melvin Fox and the other candidates on the Peoples Ticket who were declared elected at the election held on June 7, 1949; that it was impossible to ascertain the true result of said election by reason of the fact that fifty-eight persons who voted in said election were not registered in the municipal registration book for the Town of Ansted, and that they were permitted to vote unchallenged ballots, and their ballots were allowed to mingle with the ballots of qualified voters. The judgment of the court was that the certificates of election issued to Melvin Fox, W. D. Skaggs, M. L. Alley, Chalmer Skaggs, Kenneth Steele, E. R. Vawter and Orval Eades be set aside and held for naught; that the said election be declared void and of no effect; and that the offices attempted to be filled at the said election be declared vacant, to which ruling the contestees, and each of them, excepted at the time. On December 12, 1949, on motion of Melvin Fox, and the other named candidates on the Peoples Ticket, we granted this writ of error.

No ordinances were ever adopted by the council of the Town of Ansted concerning the conduct of municipal elections, except an ordinance which has no relation to this suit, and only covered nominations of candidates for offices to be filled in municipal elections. Section 3, Article 3, Chapter 8 of the Code, provides how the first election in a municipality organized under said chapter shall be held; but there is no provision in said chapter or elsewhere in the Code relating to the conduct of municipal elections required to be thereafter held under Code, 8-3-4. Nor is there, at the present time, any statute governing the registration of voters in municipalities, independently of the general statute setting up our "Permanent Registration System", enacted by Chapters 43 and 44, Acts of the Legislature, 1941, which does provide for

460

the registration of voters in municipalities, and which Act, Article 3, Section 14, (Michie's Code, 1949, 8-3-14), contains the provision that:

"It shall be the duty of each municipality by ordinance to make provision for integrating the conduct of all municipal elections with the system of 'Permanent Registration of Voters'. Such ordinances shall, to the extent that they are reasonably applicable, parallel those provisions of chapter three of the official code, which integrate county-state elections with the 'Permanent Registration System'. The provisions of this act shall supersede conflicting provisions in existing municipal charters and shall be deemed as amendments to such charters."

It is probably the general practice in municipal elections to follow the rules prescribed by statute for the conduct of elections for state, county and district offices; but no statute so provides, nor has the Town of Ansted, by ordinance or otherwise, adopted, for the control of its elections, statutory provisions with respect to the election of state, county and district offices. These statements are made in order to emphasize the problem confronting this Court in attempting to pass upon the validity of a municipal election without a statutory guide, or a controlling ordinance. It presents a situation which ought not to be permitted to continue, but one with which this Court has no power to deal.

The first assignment of error on the part of the contestees is that Shirley Pridemore did not, as a candidate for mayor on the Progressive Ticket, have the right to contest said election as to the offices of recorder or council members, for neither of which positions was he a candidate. As noted above, the contest was filed by Shirley Pridemore, as candidate for mayor and as a citizen and taxpayer of the Town of Ansted. No other candidate on the Progressive Ticket contested said election. In the notice of contest, the said Pridemore did not claim to have been elected to the office of mayor, but based his contest on the contention that there had been no legal or valid

election, and that no one had been elected to any office attempted to be filled thereby. The concluding paragraph of his notice of contest is as follows:

> "You are therefore notified that upon the above grounds I will contest the validity of said election in its entirety and your right to take or hold office thereunder, and will contend that said election was entirely illegal, void and of no effect as to any of the officers declared elected at said election, and in addition will contend that Melvin Fox was not qualified to be elected or to hold the office of Mayor for the above reasons set out."

We have examined the authorities cited by the contestant and contestees on this question. Other than providing that all contested municipal elections shall be decided by the council, we have nothing to guide us as to the manner in which such contest shall be conducted. When we examine the statute, Code, 3-9-2, covering contests for county and district offices, and others, we find specifications as to the manner in which a contest may be filed and defended as between candidates for offices; and there is in that section a provision that:

> "* * * If the contestant object to the legality of the election, or the qualification of the person returned as elected, the notice shall set forth the facts on which such objection is founded. * * *"

Apparently, the contestant here has attempted to follow this statutory provision because he has pointed out different irregularities which he contends invalidated the election. The authorities cited from other jurisdictions are in sharp conflict on the point of whether one person as a candidate on a ticket with others may, in his notice of contest, include the other candidates on the ticket on which his name appeared in the election. Contestant cites the cases of *Welch* v. *County Court*, 29 W. Va. 63, 1 S. E. 337; *Poteet* v. *County Commissioners*, 30 W. Va. 58, 3 S. E. 97; *Hamilton* v. *County Court*, 38 W. Va. 71, 18 S. E. 8; and *Brown* v. *Randolph County Court*, 45 W. Va. 827, 32 S. E. 165, in support of his contention that he, alone, may con-

test the election of June 7, 1949, in its entirety. These were cases arising out of proposed relocations of county seats, and contests by one or more citizens were permitted. We imagine it would be permitted in elections involving county or district levies, as well as other cases in which individual candidacies for office do not exist. In our opinion, the true rule is that where the contest involves the right to more than one office, and there is no contention that the election in its entirety should be voided on account of irregularities making it impossible to ascertain the true result, a contest must be filed on the part of each person who claims title to the office for which he was a candidate in the election involved. On the other hand, we think that a candidate for office, as such, or such candidate as a citizen and taxpayer of the county, district or municipality, or a group of citizens and taxpayers, may contest the election in its entirety, on grounds which, if established, would justify holding the same void. We think it would be unwise to adopt a rule which would prevent a group of citizens, or even one citizen, from contesting the result of an election which, by reason of fraud or other grounds, was ineffective to determine a legal result. We are of the opinion, therefore, that in the case at bar, where it clearly appears that the contest was not to declare the election of the candidates on the Progressive Ticket, but to have set aside and nullify the entire election, the contestant, alone, was qualified to prosecute the contest.

In the notice of contest, it is asserted that candidates on the Progressive Ticket were not represented on the election board which conducted the election; that the officers appointed by the council to conduct said election did not subscribe to the required oath as election officers; that the ballots were not preserved in the manner provided by law; that the election officers did not require voters to sign the poll book or signature card; that the poll books were not kept and sealed with the ballots in the manner provided by law; and that the election officials did not certify the result of said election under oath. There does not appear to be any serious controversy in respect to these irregularities, and in the brief filed by counsel for con-

testees, it is admitted that there were irregularities in the conduct of the election, "inasmuch as the voters were not required to sign the poll books; the ballots were not regularly preserved by seal and the signature of the Poll Clerks and other election officials written across the flap of the envelope, and the election officers took their oaths as such before commencing the discharge of their duties but did not subscribe to a written oath." But it is asserted that the ballots were carefully preserved and accurately counted, and that there was no indication of fraud, affecting the result of the election, which latter statement seems not to be questioned by the counsel for the contestant.

As we read the record in this case, the correctness of the finding of the result of the election by the election officers is not questioned. In other words, there is no change in the result of the election from the time the ballots and election books were turned over to the council by the election officers, and the date when the matter was finally heard by the Circuit Court of Fayette County. Many cases have been decided by this Court, where, following the certification of the result by election officers, there had been a change of the poll books or the ballots leading to a suspicion that the same had been tampered with. In such cases, the Court will resort to the result as certified by the election officers where it appears that there has been an opportunity to tamper with the ballots or the election records, and where, as is the common expression, "the ballots have lost their integrity". Aside from the lack of any statutory control over municipal elections, and in the absence of ordinances for such control, we are not disposed to hold an election void by reason of irregularities not of a fradulent nature, and particularly where no actual fraud in the election is claimed. In the case of *State ex rel. Revercomb* v. *Sizemore,* 124 W. Va. 700, 22 S. E. (2d) 296, a case arising out of a primary election, this Court held:

"In the absence of fraud or misconduct preventing a free expression of the will of the voters, failure of commissioners of election and poll clerks to take and subscribe the oaths in strict

compliance with Code, 3-4-16, will not vitiate an election conducted by such officers."

In view of the fact that there is no charge of actual fraud involved in the election under review, we do not think the will of the voters of the Town of Ansted should be nullified by reason of these admitted irregularities. It seems quite clear that they did not affect the expression of the will of the voters, or the result of the election.

The controlling question in this case is that arising from the fact that some fifty-eight persons voted in said election who had not been registered as voters on the municipal registration book prepared and kept in the office of the Clerk of the County Court of Fayette County. There are further charges in the notice of contest that some twenty voters were not residents of the Town of Ansted, and were not legal voters in said town, and that three persons, although residents of the town, were not registered on the municipal registration books within thirty days prior to the date of said election. The allegations, with respect to the twenty voters who allegedly were not residents of the town, do not seem to have been sustained. It is admitted, however, that some fifty-eight persons, allegedly qualified to vote, and who did vote in said election, were not listed on the municipal registration book aforesaid; and as it clearly appears from the result of the election the votes cast by these persons were sufficient in number to bring about a possible change in the result if it were known how they voted. The fact that they voted, and that their ballots were mingled with the ballots of persons who were so registered makes it impossible to determine what the result would have been had these fifty-eight people not voted, and it is on this ground, as we understand, that the circuit court nullified the election in its entirety.

The question raised is an interesting one. The Constitution of 1872 provided that:

"No citizen shall ever be denied or refused a right or privilege of voting at an election, because

his name is not, or has not been registered or listed as a qualified voter."

In the general election held in 1902, a substitute for, or an amendment to, this section was ratified by the people, and the section was made to read:

"The Legislature shall enact proper laws for the registration of all qualified voters in this State."

Constitution, Article IV, Section 12. Following this amendment to the Constitution, numerous registration statutes have been enacted, culminating in what is known as the "Permanent Registration System" provided by Chapters 43 and 44, Acts of the Legislature, 1941. In Barnes' Code, 1923, Chapter 3, Section 98a, (15), referring to registration of voters, it was provided that:

"This act shall not apply to municipal elections held in cities, towns and villages, but the law-making power in any city, town or village, may adopt the provisions of this act and may change the time of making the registration and making return thereon, and may provide that the duties to be performed by the county court hereunder shall be performed by such municipal authorities as may be named in such ordinance or act, and when so adopted and modified the same shall be applicable to such city, town or village."

Official Code, 8-3-14, effective in 1931, provides that:

"The provisions of chapter three of this Code in regard to registration of voters shall not apply to municipal elections, but the council of any municipality may adopt such provisions of said chapter three applicable to registration and may change the time of making the registration and making return thereon, and may by ordinance provide that the duties to be performed by the county court in regard to registration shall be performed by such municipal authorities as may be named in such ordinance or act, and when so adopted and modified the same shall be applicable to such municipality. Or the council of any municipality may, and shall have a right to, register its voters from the county registration books."

It will be observed that there is little change between the statute appearing in the 1923 Code, first enacted in the year 1908, and the 1931 Official Code. However, the section was further amended by Chapter 50, Acts of the Legislature, Second Extraordinary Session, 1933, the pertinent provisions of which read:

"No municipality shall be required to register its voters, unless required to do so by its special charter, or unless by ordinance it so provides. * * *"

The section then goes on to provide for voting precincts in municipalities and for other details in respect to registration of voters.

By Chapters 43 and 44, Acts of the Legislature, 1941, our present "Permanent Registration System" was enacted, and Code, 8-3-14, from which we have quoted was changed to permit the use by municipalities of the registration therein provided for, and a method was provided by which separate registrations for each municipality are set up in the office of the clerk of the county court of each county of the State, for each municipality located therein. Evidently it was the purpose of the Legislature to require the use of such municipal registrations because by said Act it is provided: "It shall be the duty of each municipality by ordinance to make provision for integrating the conduct of all municipal elections with the system of 'Permanent Registration of Voters'. * * *", and from our record we know that many municipalities have, by ordinance, provided therefor. No such ordinance has ever been adopted by the Town of Ansted. Until 1941, when the permanent registration statute was enacted, there was no requirement of the registration of voters in municipalities, unless they were acting under a special charter which so required. The question before us narrows itself to this: Is the statutory provision that makes it the duty of each municipality, by ordinance, to provide for such integration, self-executing to the extent that an election held in a town without the use of such registration is void in all cases where unregistered voters vote, and the result of

the election cannot be determined because of the intermingling of the ballots of both registered and unregistered voters.

This Court has had before it two cases in which the question of municipal registration has been involved. The first was the case of *Dotson* v. *The Town of Gilbert,* 129 W. Va. 130, 39 S. E. (2d) 108. In that case, an ordinance had been adopted by the council of the town which was held to amount to an ordinance of integration required by Chapter 44, Acts of the Legislature, 1941, Michie's Code, 1949, 8-3-14, and it was held that only voters who had been registered on the municipal registration books were entitled to vote in the town election, and the contest was decided on that principle. It was not necessary to go further in that case than to hold that the integration statute has been complied with, but by way of dicta a majority of the Court did indicate the view that the requirements of Section 14, Article 3, Chapter 8 of the Code, as last amended by Chapter 44, Acts of the Legislature, 1941, made it the imperative duty of all municipalities of the State to employ the municipal registration provided for by such Act, even though no ordinance had been adopted by them providing therefor. Two Judges concurred in the result in that case, but dissented from the views expressed in the dicta, aforesaid, basing their position upon our holding in the case of *Hill* v. *Kanawha County Court,* 126 W. Va. 797, 30 S. E. (2d) 239, in which the position was taken that the integration of municipal elections with the "Permanent Registration System" could only be brought about by an ordinance adopted by the governing body of the municipality affected. Then in the case of *Galloway* v. *City of Kenova,* 133 W. Va. 446, 57 S. E. (2d) 881, the requirement of the use of the municipal registration, as a basis for a right to vote, was upheld; but in that case there had been an ordinance adopted which brought about the integration of the municipal election with the "Permanent Registration System".

The members of the Court who constituted the majority in *Dotson* v. *Town of Gilbert, supra,* have reconsidered

their position, as expressed by way of dicta in that case, and the entire Court is now of the opinion that to effect the integration provided for by Article 3, Section 14, Chapter 8 of the Code as last amended by Chapter 44, Acts of the Legislature, 1941, there must be a legally adopted ordinance of the governing body of each municipality in the State, or a charter provision therefor. We are led to this conclusion by the fact that until the date of said Act no registration was required, and that system had existed from the date when the requirement of registration of voters in this State first originated in 1902, up to the enactment of the 1941 statute. It seems to us that the statute during all of those years having specifically provided that registration was not required in municipal elections, the Legislature did not intend to take away the right of municipalities to hold elections without registration, or at least not to nullify elections held without such registration, merely because of the failure to adopt the required ordinance. It is true that the statute is mandatory in character, but mandatory provisions are generally construed rather strictly, and this statute, while it states the duty of a municipality to bring about such integration, it just as clearly expresses the requirement that in performing this duty it shall do so by ordinance. Perhaps the statute, being of a mandatory character, might be enforced through the process of mandamus, because, under the same, it is the clear legal duty of each municipality to adopt an ordinance to carry out the intent and purpose of the Act, and to give to the cities and towns of the State safeguards against fraudulent elections which the registration of voters is designed to promote.

We are of the opinion, therefore, that the said statute not being self-executing, and the adoption of an ordinance by a municipality being necessary to make it effective therein, persons otherwise qualified and entitled to vote in the election held on June 7, 1949, in the Town of Ansted, were not deprived of their right to vote by reason of the fact that their names did not appear on the municipal registration books in the office of the Clerk of the County

Court of Fayette County; and that the council of the Town of Ansted, in passing upon the contest here involved, did not err in permitting said votes to be counted for the individual candidates on the two tickets presented to the voters in said election; and did not err in declaring those who were candidates on the Peoples Ticket to be the duly elected officers of the Town of Ansted for the term for which they were elected.

This holding disposes of the question raised as to the right of Melvin Fox to assume the duties of the office of' mayor. Section 4 of Article IV of our Constitution, provides that:

> "No person except citizens entitled to vote, shall be elected or appointed to any State, county or municipal office * * *."

But the residence of Melvin Fox in the Town of Ansted, being conceded, and having held that his right to vote was not affected by his failure to be registered on the municipal registration books in the county clerk's office, it necessarily follows that he was a person entitled to vote, and is, therefore, qualified to assume and exercise the duties of the office of mayor.

Our conclusions in this case do not require us to pass upon the form of the order of the circuit court. A literal construction of the language of the order, though probably not so intended, would seem to declare vacant the several offices in the Town of Ansted voted on in said election, whereas, under Code, 8-3-12, municipal officers, whether elected at the first or regular elections, or appointed, hold their offices until their successors are elected or appointed according to law, unless sooner removed. Of course, the contest now before the Court has necessarily delayed the qualifications of those who were elected in the June, 1949, election. Therefore, those who were in office on the first day of July, 1949, continued, and will continue, therein until the result of the June election is finally determined.

We are of the opinion that in the election held in the

Town of Ansted, on June 7, 1949, Melvin Fox was elected mayor, W. D. Skaggs, recorder, and Kenneth Steele, Chalmer Skaggs, M. L. Alley, Orval Eades and E. R. Vawter as members of the council of said town; and that in declaring said persons elected to said positions, the council of the Town of Ansted did not commit error. An order will be entered in this Court declaring the election of said persons to the offices aforesaid.

The judgment of the Circuit Court of Fayette County is reversed and set aside, and the finding of the council of the Town of Ansted, as to the result of the election of June 7, 1949, is reinstated and affirmed.

*Reversed; order entered here.*