508 S.E.2d 96

**David BARR, Petitioner Below, Appellee,**

v.

**Willis "Tom" GAINER, Respondent Below, Appellant.**

**No. 24815.**

Supreme Court of Appeals of West Virginia.

Submitted June 2, 1998.

Decided July 17, 1998.

---

George J. Cosenza, Cosenza & Underwood, Parkersburg, West Virginia, John Oshoway, Grantsville, West Virginia, Attorneys for Appellant.

Kathy A.W. Arnold, Spencer, West Virginia, Attorney for Appellee.

Kelly Elswick, Loren B. Howley, Howley & Venezia, L.C., Grantsville, West Virginia, Attorneys for Amicus Curiae.

McCUSKEY, Justice:

This is an appeal from an election contest decision concerning the November 5, 1996 general election for a seat on the Calhoun County Commission. The appellant, Willis "Tom" Gainer (hereinafter "Gainer"), asks us to overrule the June 3, 1997 final order of the Circuit Court of Calhoun County. Pursuant to that order, the circuit court disallowed as void all votes cast in the election for County Commissioner in Precinct No. 7 of Calhoun County, where Gainer's sister served as a poll worker in violation of *W.Va.Code* § 3–1–28(a)(5) (1993). The practical effect of the lower court's ruling was to remove the incumbent, Gainer, from his office as county commissioner and elect the appellee, David Barr (hereinafter "Barr"), to that office. The principal issue now before this Court is whether the remedy employed by the circuit judge was appropriate. For the reasons set forth below, we conclude that the remedy was proper, and, accordingly, we affirm the judgment of the circuit court.

## I.

## FACTUAL BACKGROUND

The November 5, 1996, general election in Calhoun County involved a race for the office of County Commissioner. Gainer, the Democratic nominee, was an incumbent County Commissioner. Barr was the Republican challenger.

Prior to the election, Patty Little, a member of the county Democratic Party Executive Committee, nominated Jackie Robinson as a poll worker for Precinct No. 7 of Calhoun County. Ms. Robinson had served as a poll worker in past elections. More importantly, Ms. Robinson is Gainer's biological sister, and Ms. Little was cognizant of that fact when she selected her to work the election. The testimony of Ms. Little suggests that she also knew it was illegal for a family member of a candidate to serve as a poll worker in the election.[1] In addition, in the Spring of 1996, Ms. Little had attended a meeting of the Democratic Party Executive Committee during which the subject of candidates' siblings serving as poll workers was discussed.

In October 1996, the Calhoun County Commission held a meeting at which it appointed as poll workers the nominees on a list submitted by the county Republican Party Executive Committee. At the time of the meeting, the county Democratic Party had not yet submitted its list of poll worker nominees. Consequently, the commission did not appoint Democratic Party poll workers at its October meeting.

After the October 1996 meeting of the county commission, different people on the Democratic Executive Committee submitted the names of the Democratic nominees for poll worker to Richard Kirby, the county clerk. A few weeks before the election, a list of nominees for Precinct No. 7 was delivered to him by Ms. Little. Ms. Robinson's name was among those on the list. The county commission did not meet to appoint poll

---

1. The transcript of a January 29, 1997 hearing in this matter before the Calhoun County Commission contains the following testimony by Ms. Little at page 53:

    Q Were you aware when you nominated Jackie Robinson to work as a poll worker that she was, in fact, Tom Gainer's sister and that was illegal?
    A I did not even connect Tom and Jackie Robinson when I asked her to work.

    Q You didn't know she was his sister?
    A I knew it, but it just—I didn't even connect the two when I asked her to work.
    Q Were you aware in general of the law prohibiting that?
    A I knew that his wife or his mother or father or child could not work.

workers after the Democratic nominees were submitted to Mr. Kirby. Because the Democratic poll worker positions were not filled by the commission, Mr. Kirby, in his capacity as county clerk, filled the vacancies by appointing those persons who had been nominated by the Democratic Party, including Ms. Robinson. Like Ms. Little, Mr. Kirby knew that Gainer and Ms. Robinson were brother and sister.

On November 5, 1996, the general election was held. The election was conducted using paper ballots, and Ms. Robinson worked on the ballot counting board in Calhoun County's Precinct No. 7. Upon entering the building where the Precinct No. 7 polling was conducted, and prior to casting their ballots, voters could see Ms. Robinson in the "counting room."

Several voters at Precinct No. 7 noted Ms. Robinson's presence as a poll worker. These voters knew that she was Gainer's sister. One such voter indicated that she did not think Ms. Robinson's service as a poll worker was proper. Another voter expressed her belief that Ms. Robinson would know for whom she had voted. A third voter testified that he specifically recalled seeing Ms. Robinson as he passed the counting room before casting his vote. Ms. Robinson was also observed outside the counting room by voters and fellow poll workers. She was seen in the area where the ballot box was located, getting coffee, walking down the hall to the restroom, and outside the building talking to her daughter.

Gainer was aware that his sister usually serves as an election poll worker. Consequently, according to his affidavit, he was not surprised that she did so in the November 5, 1996 election.

The county-wide, unofficial election results, as computed on November 5, 1996, from the ballot counters' tally sheets, showed Gainer to be the victor county-wide with 1,313 votes in his favor and 1,289 votes for Barr, a margin of 24 votes. In Precinct No. 7 where his sister served as a poll worker, Gainer's margin was more substantial with 164 votes for Gainer and 126 votes for Barr, a difference of 38 votes.

On November 12, 1996, the Calhoun County Commission, sitting as the Board of Canvassers, declared the official result for the Commissioner's race to be 1,323 for Gainer and 1,300 for Barr, a margin of 23 votes. In Precinct No. 7, the count was 164 for Gainer and 130 votes for Barr, a 34 vote difference. Barr filed a demand for a recount, which was held on November 22, 1996, and certified by the Board of Canvassers on December 2, 1996.[2] The final certified result was as follows:

| | | | |
|---|---|---|---|
| Calhoun County: | Gainer—1,325 | Barr—1,298 | (Gainer by 27) |
| Precinct No. 7: | Gainer—167 | Barr—127 | (Gainer by 40) |

On December 11, 1996, Barr filed objections with the county commission pertaining to the conduct of the election, the results, and the certification of those results. Among other things, he alleged that Ms. Robinson was legally disqualified from serving as a poll worker due to her relation to Gainer.

On January 29, 1997, the county commission conducted a hearing on Barr's objections. Testimony and other evidence was presented, and a record was prepared. After the hearing, the commission voted on whether to sustain or reject Barr's objections. Gainer abstained from the vote. The two remaining commissioners were unable to reach agreement. Thus, Barr's objections were rejected, the recount was allowed to stand, and the results of the election to the Calhoun County Commission were certified.

Barr thereafter appealed to the Circuit Court of Calhoun County. On May 22, 1997, the circuit judge issued a Letter of Opinion, setting forth findings of fact and conclusions of law. Among other things, the circuit

2. Appellant Gainer sat as a member of the Board of Canvassers for both the official count on November 12, 1996, and the recount on December 2, 1996. The recount was certified by a vote of 2 to 1, with Gainer voting with the majority for certification.

judge found that Gainer, Ms. Robinson, Ms. Little, and Mr. Kirby "knowingly and intentionally violated the provisions of WV Code § 3–1–28 prohibiting Jackie Robinson's service as a poll worker." On June 3, 1997, the circuit judge entered an order disallowing as void all votes cast for the office of County Commissioner in Calhoun County Precinct No. 7 in the November 5, 1996 election. It is from that order that Gainer appeals to this Court.

## II.

## STANDARD OF REVIEW

■ The standard of review on appeal of an election contest proceeding was articulated by this Court in Syllabus Point 6 of *Brooks v. Crum*, 158 W.Va. 882, 216 S.E.2d 220 (1975):

> While the appellate court may examine the record in the review of election contests in order to reach an independent conclusion, it merely determines whether the conclusions of law are warranted by the findings of fact, and it will not, as a general rule, disturb findings of fact on conflicting evidence unless such findings are manifestly wrong or against the weight of the evidence.

## III.

## DISCUSSION

■ The issue before this Court is whether the circuit court utilized the appropriate remedy in disallowing as void all votes cast for the office of County Commissioner in the precinct where Gainer's sister served as a poll worker. We conclude that this remedy was entirely proper under the facts and circumstances of this case.

■ *West Virginia Code* § 3–1–28 (1993) provides unequivocally that

> (a) To be eligible to be appointed or serve as an election official in any state, county or municipal election held in West Virginia, a person: ... (5) May not be the parent, child, sibling or spouse of a candidate on the ballot in the precinct where the official serves....

It is undisputed in this case that Gainer's sister's service as a poll worker at Precinct No. 7, where he was on the ballot, constituted a clear violation of this statute. Gainer argues that the statutory language is merely directory, not mandatory, due to the Legislature's use of the words "may not" rather than "shall not" in drafting the provision. The circuit court flatly rejected this semantical argument, reasoning that

> [t]o rely upon the absence of "shall not" as a basis for interpreting the statute as merely directory, would rob the statute of all meaning and effect and nullify its clear intent. This Court must conclude the legislature did not establish section 28's prohibitions and at the same time intend the prohibitions to be violated at the pleasure of election officials.

■ We, too, are unpersuaded by Gainer's argument. We observe that "all provisions of election laws are mandatory in the sense that they impose the duty of obedience upon those who come within their purview." 26 AM.JUR.2D *Elections* § 466 (1996). As this Court noted in *Terry v. Sencindiver*, 153 W.Va. 651, 658, 171 S.E.2d 480, 484 (1969), "[t]he voice of the public demands and our statutes are designed to produce elections free from fraud and illegality." In order to give effect to the manifest intent of the Legislature in enacting *W.Va.Code* § 3–1–28(a)(5), we interpret the statute's prohibition as being mandatory and no less forceful than had its drafters used the word "shall" in articulating the qualities which render a person ineligible to serve as an election official in West Virginia.

■■ Moreover, in Syllabus Point 2 of *Pridemore v. Fox*, 134 W.Va. 456, 59 S.E.2d 899 (1950), this Court held that

> [i]n the absence of a showing of fraud or misconduct on the part of election officers, preventing a free expression of the will of the voters, and affecting the result of the municipal election, irregularities in the conduct thereof by such officers, not shown to have affected its result, will not vitiate such election.

Conversely, and implicit in this holding, is the proposition which we find applies in this

case. That is, when misconduct on the part of election officers prevents a free expression of the will of the voters, and affects the result of the election, the irregularities in the conduct thereof by such officers operate to vitiate the election.

In this case, the circuit judge found that "a County Commissioner, a County Clerk, a member of a party executive committee, and a poll worker ... knowingly violated" the provisions of *W. Va. Code* § 3–1–28(a)(5). Upon a careful review of the record, it does not appear to us that these findings of fact are manifestly wrong or against the weight of the evidence, and, therefore, we will not disturb them. *See Brooks, supra.* In addition, we believe that it can be reasonably inferred, from the testimony adduced at the hearing before the county commission, that Ms. Robinson's service as a ballot counter had a chilling effect on the free expression of the will of the voters in Precinct No. 7. Moreover, we find that there is convincing evidence that the result of the election was, in fact, affected by this misconduct. The margin in favor of Gainer in Precinct No. 7 (40 of 294 votes) was sufficient to change the outcome of the election. In other words, Gainer would not have won the election but for the vote spread in that precinct. Given this evidence, we conclude under *Pridemore, supra,* that the November 5, 1996 election for Commissioner was vitiated by the misconduct in Precinct No. 7.

The Legislature has not crafted a remedy for a violation of *W. Va. Code* § 3–1–28(a)(5). Consequently, the task of fashioning a suitable remedy falls upon the courts. As stated earlier, in the case *sub judice,* the circuit court determined that it was necessary to disallow the votes cast for County Commissioner in Precinct No. 7. Thus, we proceed to consider whether the circuit judge erred in selecting this remedy.

■ In Syllabus Point 4 of *Terry v. Sencindiver, supra,* this Court stated:

Where illegal votes have been cast and have been commingled with the valid votes received in a precinct, making it impossible to purge such illegal votes, the entire vote of the precinct must be rejected if it appears that sufficient illegal votes were cast to affect, or leave in doubt, the result of said election.

While we do not imagine that the will of every voter in Precinct No. 7 was stifled by Ms. Robinson's illegal service at the polls, it seems to us that the impropriety of her service was noted by a sufficient number of voters that the result of the county commission election in that precinct is irreversibly tainted. Because it would be impossible to purge only the tainted votes, it was necessary to reject all votes cast for County Commissioner in Precinct No. 7, which is precisely what the circuit judge did. Recognizing that the disenfranchisement of voters is not a matter to be taken lightly, the circuit judge narrowly tailored the remedy which he ordered so that only those votes cast in the Commissioner's race in that precinct were disallowed. The voters' choice in that precinct for all other offices was not disturbed.

■ Accordingly, under the circumstances of this case, we hold that when the sibling of a candidate for public office serves as a poll worker in a precinct where the candidate's name is on the ballot, in violation of *W. Va. Code* § 3–1–28(a)(5) (1993), and there is evidence that the sibling's presence at the polls prevented a free and full expression of the voters' will and affected the result of the election, all votes cast in that precinct for that office are rendered invalid and should be disallowed.

In so ruling, we underscore that our foremost concern in the resolution of election disputes is the preservation of the sanctity of the vote. Thus, while even the partial disenfranchisement of voters should not be undertaken without all due caution, this Court will not countenance misconduct which imperils the voters' choice. We uphold the circuit court's order because it advances these ideals.

Affirmed.